### FROST LUMBER INDUSTRIES, Inc., v. FEDERAL PETROLEUM CO.

#### No. 694.

District Court, W. D. Louisiana. Shreveport Division.

July 14, 1937.

Lee & Lee, of Shreveport, La., for complainant.

Shotwell & Browne, of Monroe, La., and T. J. Arnold, of Houston, Tex., for respondent.

DAWKINS, District Judge.

This suit was commenced in the form known to the Louisiana law as a slander of title action. It alleged that defendant was claiming to own an interest in the minerals under large tracts of land in the parishes of Union, Ouachita, De Soto, Sabine, and Natchitoches, without right or justification. It prayed that defendant be ordered to desist therefrom or that it assert such title as it claimed.

In response, defendant set forth its ownership of an undivided one-half interest in the minerals, based upon certain conveyances, and this had the effect of converting the matter into what is called, under the state practice, a petitory action to try title to real property. As against the title so alleged by defendant, the plaintiff pleaded the prescription of ten years' liberandi causa, under the provisions of the Louisiana Revised Civil Code (article 3478 et seq.).

There is little or no dispute as to the facts. On January 12, 1917, the Frost-Johnson Lumber Company and the Union Sawmill Company conveyed to, the defendant's predecessor in title an undivided one-half interest in the minerals under the lands in question. On the same date a joint operating agreement was entered into for the development of all or any part of the said minerals by any one of the three parties named. In the following October the Union Sawmill Company transferred to the Frost-Johnson Lumber Company all of its lands in the parishes of Union and Ouachita, in fee simple, including those under which the one-half interest in the minerals now claimed by defendant had been conveyed.

On February 23, 1920, Frost-Johnson Lumber Company, Union Sawmill Company, and Federal Petroleum Company (a Louisiana corporation), jointly conveyed to Union Power Company all gas and gas rights under the same lands, and another joint operating agreement was entered into between all of the parties, providing that each might develop the properties for their minerals, according to its interest. If gas was produced, it was to be for the account of Union Power Company, and, if other minerals, for the account of the other two parties to the agreement.

Thereafter, on March 31, 1923, the Federal Petroleum Company of Louisiana, which had thus acquired these rights, transferred all of its assets to the Federal Petroleum Company of Delaware, defendant in the present suit, except the gas and gas rights, which had previously been conveyed to the Union Power Company. In the meantime, Federal Petroleum Company (of Louisiana) had acquired by assignment a lease upon 160 acres of land belonging to Emmet Parks, executed by him on September 25, 1916, and on October 22, 1918, it conveyed one-half interest in this lease to Frost-Johnson Lumber Company. Thereafter, the last-mentioned company, on February 11, 1918, purchased from Parks the fee title to 40 acres of this tract, and on August 23d following the remaining 120 acres, so it became the owner of the entire 160 acres upon which the aforesaid lease of September 25, 1916, had been given by Parks. A question having arisen as to whether this lease was still in effect, on June 11, 1926, Frost-Johnson Lumber Company executed an instrument, the purpose of which appears to have been to recognize and acknowledge the rights of Federal Petroleum Company in the Parks lease.

The Interstate Natural Gas Company, Inc., had become the owner of the gas rights under the Parks lands, and it, the Federal Petroleum Company, Union Sawmill Company, and Frost Lumber Industries (plaintiff herein) executed an instrument abandoning and canceling the Parks lease. This left the title in fee in the Frost Lumber Industries unincumbered by the aforesaid lease.

On February 9, 1928, Frost Lumber Industries conveyed to Federal Petroleum Company, defendant, an undivided one-half interest in all the mineral rights in this same 160 acres, of (Parks) land, except gas.

614

It is admitted that there have been no developments upon the large acreage in controversy in the five parishes, to interrupt the prescription of ten years' liberandi causa, but it is strenuously insisted by defendant that the plaintiff, Frost Lumber Industries, Inc., its associates and ancestors in title, have interrupted prescription by written acknowledgments recognizing the rights of defendants in the minerals, except gas, under all of said lands. In support of this contention, it relies, among other things, upon the following provisions in the several transfers and resolutions of the boards of directors and stockholders of the plaintiff and its predecessors in title:

(1) In the sale of October 15, 1917, by Union Sawmill Company to Frost-Johnson Lumber Company, of all of the former's lands in the parishes of Union and Ouachita, it was recited: "It is understood and known between the parties hereto that a one-half interest to all the oil, gas and mineral rights on said lands has been conveyed to the Federal Petroleum Company, with other reservations and rights made under contract with that Company. It is agreed and understood that all the oil, gas and mineral rights and all its rights under the contract with said Federal Petroleum Company of date January 12th, 1917, are bargained, granted, sold and conveyed hereunder to the said Frost-Johnson Lumber Company by this conveyance."

(2) The transfer on December 23, 1920, by Frost-Johnson Lumber Company, Union Sawmill Company, and Federal Petroleum Company to Union Power Company of all the gas rights under the Parks lease, wherein it was declared:

"Whereas, Grantors collectively are the owners in fee simple of all the oil, gas and other minerals on, in and under a large acreage of land in the States of Arkansas and Louisiana, and are the owners and holders of oil, gas and mineral leases and rights on, in and to certain other lands in said states, in acreage and amounts approximately as follows:—

In Arkansas, mineral rights owned, about—67,591.34 acres,
In Louisiana, mineral rights owned, about—180,009.34 acres,
In Louisiana, leases held, about—3,090.00 acres,

Total—about—250,690.68 acres, of which oil, gas and minerals, and leases,

Federal Petroleum Company is the owner of an undivided one-half (½) interest, and said Frost-Johnson Lumber Company of Missouri, and Union Sawmill Company of Arkansas are the owners of the remaining one-half (½) interest; and * * *."

As of the same date, December 23, 1920, an operating agreement was executed by all four parties, that is, Frost-Johnson Lumber Company, Union Sawmill Company, Federal Petroleum Company, and Union Power Company, providing for the production and development of the minerals owned by each, respectively.

(3) On June 11, 1926, some question having arisen as to whether the Parks lease on 160 acres of land, above referred to, was still in effect, Frost-Johnson Lumber Company executed an instrument, wherein it was declared as follows:

"Now, Therefore, Know All Men by These Presents: That Frost-Johnson Lumber Company of Missouri, acting herein by and through its duly authorized officers for and in consideration of the premises and the further sum of $10.00 to it in hand paid the said Frost-Johnson Lumber Company does by these presents *ratify and confirm* said lease above referred to, which appears of record in Book 27, page 41, of Union Parish, Louisiana, covering the south half (S½) of the Southeast Quarter (SE¼) and the Northeast quarter (N¼) of the Southeast quarter (SE¼) of Section 17, and the northeast (NE¼) of the Northeast quarter (NE¼) of the northeast quarter (NE¼), Section 21, all in Township 20 North, Range 3 East, Union Parish, Louisiana, and further does hereby and herein place said lands in and under the terms of the operating contracts and conveyances above referred to, so that said lands shall hereafter be bound under, regarded as, and made a part of said contracts and conveyances the same as other lands described therein."

(4) A resolution of the board of directors of the Frost-Johnson Lumber Company, under date of November 14, 1927 (after it had acquired the unincumbered title in fee to the Parks 160 acres of land), reading as follows:

"Resolved, that E. A. Frost, as President, be, and he is hereby authorized for and in the name and behalf of Frost Lumber Industries, Inc., to join with Union Sawmill Company, in a sale and conveyance to Federal Petroleum Company of a full undivided one-half interest in and

to all of the oil and other mineral and mineral rights, except gas, in and under any and all of the S¼ of the SE¼ and the NE¼ of the SE¼ of Section 17, and the NF¼ of the NE¼ of Section 21, all in Township 20 N. Range 3 E., in Union Parish, Louisiana, which instrument and deed of *Conveyance shall provide for and bring said property above described under and be treated, operated and developed as a part of that certain operating contract and conveyance, dated January 12, 1917, by and between Frost-Johnson Lumber Company of Missouri, Union Saw Mill Company of Arkansas and Frost-Johnson Lumber Company of Texas, Republic, Production Company and Federal Petroleum Company, which appears of record in Deed Book 26, page 726, of Union Parish, Louisiana, and here ratified and confirmed,* bringing the above described property thereunder, according to its terms. (Defendant's Exhibit I.)". (Italics all quotations by counsel for defendant.)

(5) A provision in the deed of Frost Lumber Industries to Federal Petroleum Company, under date of February 9, 1928, conveying to it an undivided one-half interest in the minerals under the Parks lands (except gas), as follows: "That from and after date hereof the property above conveyed shall come under and be treated, operated and developed as a part of that certain Operating Contract and Conveyance dated January 12, 1927, by and between Frost-Johnson Lumber Company of Missouri, Union Saw Mill Company of Arkansas, and Frost-Johnson Lumber Company of Texas, Republic Production Company and Federal Petroleum Company, and all of the terms of said Operating Contract and Conveyance shall be applicable to and include the lands hereinabove described."

██ Under the law of Lousiana, as settled by the decisions of its Supreme Court, a conveyance or reservation of the minerals in or under land, separate and apart from the soil, creates only a servitude which entitles the person in whose favor they have been so reserved or to whom they have been conveyed to go upon said lands for the purpose of exploring for and producing such minerals. If not exercised within ten years, such rights are lost by prescription. Frost-Johnson Lumber Company v. Heirs of Salling, 150 La. 756, 91 So. 207.

Defendant contends that these declarations and other circumstances meet the requirements for interrupting prescription under article 3520 of the Revised Civil Code, which reads as follows: "Art. 3520. *Acknowledgments.* Prescription ceases likewise to run whenever the debtor, or possessor, makes acknowledgment of the right of the person whose title they prescribed."

In April, 1935, the Supreme Court of the state had occasion to consider most of the above-quoted provisions of the several instruments urged by defendant as interrupting prescription, in the suit of this same plaintiff against the Union Power Company (182 La. 439, 162 So. 37, 40), to whom the gas rights had been conveyed, as above recited, and in which the issues were provoked and presented in the identical manner as here. There the parties on both sides cited and relied upon the same decisions of the court, as here, in most instances asserting that the same cases supported their respective contentions. The court took occasion to review its former decisions, beginning with Frost-Johnson Lumber Co. v. Nabors Oil & Gas Company, 149 La. 100, 88 So. 723 (in which the writer of the present opinion took part as a member of the court at that time), and including Sellington v. Producers' Oil Company, 152 La. 81, 92 So. 742; Lewis v. Bodcaw Lumber Company, 167 La. 1067, 120 So. 859, and White v. Ouachita Natural Gas Company, 177 La. 1052, 150 So. 15. Frost Lumber Industries v. Union Power Company, supra, involved only the gas rights under lands in De Soto and Sabine parishes, which had been embraced along with those in Union, Ouachita, and Natchitoches parishes in the original contract of January 12, 1917, above referred to. Having completed its review of these cases, the court said:

"As we have seen, therefore, each of the above-mentioned cases announces the principle that a specific acknowledgment of a prior reservation of mineral rights is not of itself sufficient to interrupt the running of prescription; that something more is required for that purpose than the mere acknowledgment of the existence of such rights in a third person. As pointed out in the Lewis Case, there must be coupled with the acknowledgment the purpose and intention of the party making the acknowledgment to interrupt the prescription then accruing. And, as pointed out in the Sellington Case, the acknowledgment, no matter how specific, must be limited in its legal effect to the lands actual-

ly· conveyed, and cannot by implication be extended to lands which, though described or referred to, are not embraced in the conveyance. * * *

"On reviewing the evidence offered on the trial of the case, we find that the various documents on which defendant relies for the interruption of the prescription pleaded by the plaintiff do not describe any of the lands involved in this case. All the documents, with a few exceptions, refer only to lands situated in the parishes of Ouachita and Union. It is true that in many of the documents there is some reference to the original and operating contracts and some general language as to their ratification, but the documents themselves are clearly intended by the parties to operate only on lands in the two parishes above mentioned. They have no effect on lands situated in the parishes of De Soto and Sabine, which are subject to entirely different and distinct servitudes. Hence they are not sufficient to interrupt the running of prescription."

■ 1. The first of the stipulations relied upon by defendant, and quoted above, was included in the deed ·by which the Union Saw Mill Company conveyed to Frost-Johnson Lumber Company in fee simple all of the lands situated in Union and Ouachita parishes, to which the present defendant or its predecessor in title was not a party, and in the light of decisions of· the state court, appears to have been nothing more than an acknowledgment of the existence of the previous transfer of an undivided half interest in the minerals to the Federal Petroleum Company and by which the lands conveyed were incumbered. There does not appear "the purpose and intention of the party making the acknowledgment, to interrupt prescription then accruing," as was said by the Supreme Court to be necessary in Frost Lumber Industries v. Union Power Company, supra.

■ 2. In the instrument of December 23, 1920, from which the language secondly quoted above was taken, the Frost-Johnson Lumber Company, Union Saw Mill Company, and Federal Petroleum Company were conveying to the Union Power Company the gas rights only, and it appears to have been nothing more than a joint declaration of the then existing fact that the several vendors were the owners of the mineral rights in "large acreages of lands in the States of Arkansas and Louisiana," as well as leases on other lands, consisting of "67,591.34·acres" in Arkansas, "180,009.34 acres" in Louisiana, and "3,090 acres" of leases in Louisiana, making a total of about "250,690 acres" in all, of which oil, gas, and minerals and leases "Federal Petroleum Company is the owner of an undivided one-half (½) and said Frost-Johnson Lumber Company of Missouri, and Union Saw Mill Company of Arkansas, are the owners of the remaining one-half (½) interest."

Here again there was only an acknowledgment of an existing fact and nothing to show a clear purpose "to interrupt prescription then accruing."

■ 3. In the third instrument, of date June 23, 1926, the Frost-Johnson Lumber Company was dealing with the Emmett Parks 160-acre tract, as to the lease upon which a question had arisen, and the main purpose appears to have been to declare that this lease was still in effect, which was recognized by specific description, the act reciting that, "in consideration of the premises and the further sum of $10.00 to it in hand paid, the said Frost-Johnson Lumber Company does by these presents ratify and confirm said lease above referred to (on the Parks land) which appears of record in Book 27, page 41, of Union Parish, covering" the described 160 acres of land in question, and, further, it "does hereby and herein place said lands in and under the terms of the operating contracts and conveyances above referred to, so that said lands shall hereafter be bound under, regarded as and made a part of said contracts and conveyances, the same as other lands therein described." Here again it seems clear that the only purpose was to ratify, confirm, and renew this particular lease, so as to remove any question of its then existence, and to place it under the operation of the other contracts, which had not prescribed (they having been executed beginning January 12, 1917, and this last-mentioned transaction with the Parks lease being dated June 11, 1926). However, I am of the view that it did serve to set a new date for the running of prescription as to the Parks 160-acre tract and was so intended, which carried it to June 11, 1936, but for an instrument subsequently entered into between Interstate Natural Gas Company, (assignee from Union Power Company of the gas rights)

and all the other parties having any interest therein by which the Parks lease, through mutual consent, was abandoned and canceled.

4. After cancellation of the Parks lease which left the Frost Lumber Industries, plaintiff herein (successor to all of the rights of the Frost-Johnson Lumber Company and Union Saw Mill Company), the sole owner in fee simple of this tract, the board of directors of that corporation, on November 14, 1927, passed the resolution containing the language in the fourth paragraph quoted hereinabove, relied on by defendant, directing its president "to join the Union Saw Mill Company in a sale and conveyance to Federal Petroleum Company of an undivided one-half interest in and to all of the oil and other minerals and mineral rights, except gas, in and under any and all of the" Parks "lands, which instrument and deed of conveyance shall provide for and bring said property above described under and be treated, operated and developed as a part of that certain operating contract and conveyance dated January 12, 1917, by and between Frost-Johnson Lumber Company of Missouri, Union Saw Mill Company of Arkansas, and Frost-Johnson Lumber Company of Texas, Republic Production Company and Federal Petroleum Company, which appears of record in Deed Book 26, p. 726, of Union Parish, Louisiana, and hereby ratified and confirmed, bringing the above described property thereunder according to its terms."

5. The language quoted above under the fifth heading herein, and relied on by the defendant, is found in the deed of date February 9, 1928, by the president of the Frost Lumber Industries pursuant to resolution of its board of directors of November 14, 1927, conveying to Federal Petroleum Company an undivided one-half interest in the minerals, except gas, in the Parks lands. It is admitted that the conveyance and operating contracts referred to therein were dated January 12, 1917, instead of January 12, 1927. The expressions in these last two mentioned instruments, the resolution and deed, are the ones most strongly relied on by defendant. Plaintiff, in answer to the allegations of the answer, pleading them as interruptions of prescription, has pleaded in the alternative error of fact and law, in that both the resolution and deed were prepared by counsel for the defendant, and it is charged that this language was slipped into the documents in an effort to have plaintiff waive prescription without attracting its attention to the fact that it was doing so. On the trial, counsel for defendant objected to the introduction of correspondence as well as oral evidence, the effect of which was to establish the correctness of the allegations that the resolution and deed had been prepared by counsel for defendant, on the ground that there was no charge of ambiguity in the said instruments themselves, and for that reason such evidence was not admissible. At the time, the court expressed the view that such evidence could only be received under a claim of ambiguity, but upon examination of the law is convinced that it may be received to support the charge of error or mistake, in so far as it may tend to do so.

Taking up first the resolution of the board of directors, when the entire document, offered in evidence by defendant as its Exhibit I, is examined (which is a copy of the minutes of the directors' meeting), it appears that the meeting was called specially, as it recites, "to act upon certain ratifying resolutions."

The first resolution pertained "to the sale of gas and gas rights on 355.56 acres of land in Union and Ouachita Parishes, Louisiana, by the Union Power Company, Inc. to the Interstate Natural Gas Company, for a consideration of $25,059.40." It recited that the Frost Lumber Industries was the "owner of the fee title to the lands whereon the gas and gas rights have been heretofore conveyed to Union Power Company, Inc. and is also owner of one-half of the capital stock of Union Power Company, Inc." It then states that the Union Power Company, Inc. proposed to sell to Interstate Natural Gas Company, Inc., the gas and gas rights on this 355.56 acres of land, described by governmental subdivisions (which, as hereinabove recited, had previously been conveyed to the said Union Power Company, Inc., by Frost-Johnson Lumber Company, Union Saw Mill Company, and Federal Petroleum Company on February 23, 1920), and that "it is proper that the Frost Lumber Industries, Inc. do now expressly recognize and acknowledge the full ownership of said gas and gas rights in the Union Power Company, Inc. and join in the conveyance of same to the Interstate Natural Gas Company, Inc. for the purpose of recognizing the ownership of said

Union Power Company, Inc. at the time of the conveyance to the Interstate Natural Gas Company, Inc. and for the further and specific purpose of interrupting any prescription running against the ownership of gas and gas rights for the development thereof by the Union Power Company, Inc. and Interstate Natural Gas Company, Inc. under its intended acquisitions thereof. * * *" The President of the Frost Lumber Industries, Inc., was authorized to execute on behalf of that company such contracts or deeds of conveyance as would release the gas rights from the effects of all operating contract theretofore made between the parties, to specially acknowledge and interrupt prescription, and to join the Union Power Company in conveying to Interstate Natural Gas Company a complete and unincumbered title to said gas rights. These matters were covered in a separate and distinct resolution. The minutes of the meeting then recited as follows: "The chairman stated that among the gas rights sold by Union Power Company, Inc. to Interstate Natural Gas Company, Inc. was a gas lease on 160 acres in Union Parish, Louisiana, known as the Emmett Parks lease; that subsequent to the creation of said lease in 1917, Frost Lumber Industries, Inc. had acquired a fee simple title to the land which it involved, and, inasmuch as said lease was about to expire by prescription in August, 1927, it had been agreed, by common consent of all the parties at interest to cancel said lease and abandon all mineral rights thereunder, and to have Frost Lumber Industries, Inc. make the Interstate Natural Gas Company, Inc. a deed to the gas,—all of which has been done; that under the Emmett Parks lease, the Federal Petroleum Company had held one-half undivided interest in the minerals other than gas, and since that Company had joined in the cancellation and abandonment of said lease, it was now right and proper that Frost Lumber Industries, Inc. re-establish the interest of Federal Petroleum Company by deeding to said Company an undivided half interest in such minerals other than gas. He accordingly introduced the following resolution and moved its adoption, towit:"

Then follows the resolution referred to under the fourth heading quoted hereinabove and relied on by defendant.

It is thus seen that in dealing with the gas rights to be conveyed to Interstate Natural Gas Company, Inc., there was a clearly expressed intention and purpose to transfer these rights upon a comparatively small amount of 355.56 acres of land for the substantial sum of $25,059.40, presently received, and to interrupt and waive the running of prescription, so as to start a new beginning point, which under the law of the State would continue those rights for another period of ten years.

On the other hand, as to the Parks 160-acre tract, there was no consideration other than that expressed in the resolution as quoted above, that since "in the Emmett Parks lease the Federal Petroleum Company had (before the cancellation by mutual consent of itself and others having an interest in the Parks lease) held a one-half undivided interest in the minerals, other than gas, and since that Company (Federal Petroleum Company) had joined in the cancellation and abandonment of said lease, it was now right and proper that Frost Lumber Industries reestablish the interest of Federal Petroleum Company by deeding to said company an undivided half interest in such minerals, other than gas." There was no mention of prescription or of any other land and while, as to the Parks lands, this was a new conveyance, which had the effect of starting anew the prescriptive period as to them, it would be going very far indeed to say that the directors of the plaintiff company, when it had required a substantial consideration from the Interstate Natural Gas Company in the transfer of a new title to the gas rights under an express declaration of the interruption of prescription, had in mind or intended to do the same thing with respect to more than a quarter of million acres of other lands, in favor of the Federal Petroleum Company, in dealing with the small Parks tract of 160 acres, recognizing the latter company's interest therein for the reasons expressly stated, merely because, after referring to the original transfer and operating agreements, in which this particular tract had been included, for the purpose of placing it under them, the resolution and subsequent deed recited that these earlier instruments, identified by the book and page of the record in which they were recorded of the parish of Union, were "here ratified and confirmed, bringing the above described property (the Parks lands) thereunder according to its terms."

It is shown clearly by the correspondence between the officers of the plaintiff and defendant and the oral testimony of plaintiff's witnesses, undisputed, that these resolutions and deeds (including those passed by the plaintiff and Union Saw Mill Company) were prepared by defendant's attorneys, and there is not the slightest mention of any other lands than those specifically described in these resolutions, or any suggestion that prescription should be interrupted or waived upon these other large tracts in five different parishes. It seems reasonable that, inasmuch as the defendant and its counsel were presumed to know the law with respect to the matter and were having their attention directed to the question of prescription in protecting the interest of the Interstate Natural Gas Company in the comparatively small amount of lands which were being dealt with in its behalf, had there been a desire or purpose to similarly protect the rights of defendant in these other large tracts affected by the same instruments, the subject would have been mentioned and a clear understanding had, just as was done with the Interstate Natural Gas Company, and it would not have been left to inferences to be drawn from the use of the meagre language now relied upon. Under all of the circumstances, I think the resolution and deed can be fairly construed to mean that the instruments of January 12, 1917, were "ratified and confirmed" for the purpose of "bringing the above described property (the Parks lands) thereunder according to its terms," and there was no such clear intention to interrupt prescription with respect to the other lands as is necessary according to the interpretation by the Supreme Court of the applicable article of the Revised Civil Code.

It is contended by defendant that the earlier decisions of the Supreme Court had established a construction amounting to a right of property, which had the effect of inducing defendant to believe that the language now relied upon constituted an acknowledgment or interruption of prescription, which the later or narrower interpretation, as it is termed by defendant, in more recent decisions, could not have upset. However, I think the court's own analysis of these cases answers this contention, and it is not necessary for me to discuss them further.

Plaintiff should have judgment as prayed for.

Proper decree should be presented.