**FROST LUMBER INDUSTRIES, Inc., v. FEDERAL PETROLEUM CO.**

No. 768.

District Court, W. D. Louisiana, Shreveport Division.

Jan. 14, 1939.

On Rehearing Oct. 17, 1939.

958

Lee & Lee, of Shreveport, La., for complainant.

Shotwell & Brown, of Monroe, La., and T. J. Arnold, of Houston, Tex., for respondent.

DAWKINS, District Judge.

This suit was filed as a form of possessory action known to the Louisiana law as jactitation, or slander of title to real property. Defendant converted it into a petitory action to try title. It involves the mineral rights on several thousand acres of land in Union and Ouachita Parishes. Plaintiff, in defense of the title set up by defendant, pleaded the prescription of ten years liberandi causa for non-user, under Arts. 789, 3529 and 3546 of the Louisiana Civil Code.

The facts have been stipulated and the court finds them as so agreed, as follows:

"It is hereby stipulated and agreed by and between the parties hereto, by and through their undersigned counsel, as follows:

"I. That Federal Petroleum Company, named as defendant in this action, was merged with Republic Production Company (who has appeared herein as defendant) on May 17, 1937; and that, by virtue of said merger, Republic Production Company succeeded to all of the property, rights, privileges, powers and franchises and all and every other interest of Federal Petroleum Company; and that, therefore, Republic Production Company is the real and actual defendant in said cause.

"II. The act of conveyance, dated January 12, 1917, the act of conveyance, dated December 23, 1920, and the act of conveyance, dated March 31, 1923, described in sub-paragraphs A, B and C of paragraph III of defendant's answer were all duly recorded in the conveyance records of Sabine, DeSoto, Natchitoches, Ouachita and Union Parishes, Louisiana.

"III. That, effective July 1, 1935, the name of Frost-Johnson Lumber Company, by charter amendment, was changed to Frost Lumber Industries, Inc., and that Frost-Johnson Lumber Company, a Missouri corporation, is the same as Frost Lumber Industries, Inc., plaintiff in this cause.

"IV. That the operating contract and agreement, dated January 12, 1917, between Frost-Johnson Lumber Company of Missouri, et al, and Federal Petroleum Company of Louisiana, et al, mentioned in paragraph VI of defendant's answer, and the joint operating contract, dated December 23, 1920, entered into between Frost-Johnson Lumber Company of Missouri et al and Union Power Company, Inc., mentioned in paragraph VIII of defendant's answer were both duly recorded in the conveyance records of De Soto, Sabine, Natchitoches, Ouachita and Union Parishes, Louisiana.

"V. That, among the lands described and embraced within the conveyances described in paragraph II hereof and the joint operating contracts described in paragraph IV hereof are certain lands located in the Parishes of Ouachita and Union, State of Louisiana, which form six (6) blocks of land, as are more particularly set out and described in paragraph X of defendant's answer; and that the land in Block A consists of 38,800.44 acres of land, all of which is contiguous and adjacent and forms one undivided and continuous tract of land; that the land in Block B consists of 9,098.07 acres of land, all of which is contiguous and adjacent and forms one

undivided and continuous tract of land; that the land in Block C consists of 128.36 acres of land, all of which is contiguous and adjacent and forms one undivided and continuous tract of land; that the land in Block D consists of 626.89 acres of land, all of which is contiguous and adjacent and forms one undivided and continuous tract of land; that the land in Block E consists of 19.00 acres of land, all of which is contiguous and adjacent and forms one undivided and continuous tract of land; and that the land in Block F consists of 119.94 acres of land, all of which is contiguous and adjacent and forms one undivided and continuous tract of land.

"VI. That the act of conveyance and operating agreement entered into between Union Power Company, Inc. and Frost Lumber Industries, Inc., and Federal Petroleum Company, on the one part, and Interstate Natural Gas Company, Incorporated, on the other, dated July 26, 1926, was duly recorded in conveyance records of Ouachita and Union Parishes, Louisiana.

"VII. That included in the conveyance and operating contract described in the next preceding paragraph were certain lands located in Block A, all of which form one tract of land and all of which are contiguous and adjacent; that included in the conveyance and operating contract described in the next preceding paragraph were certain lands located in Block B, all of which form one tract of land and all of which are contiguous and adjacent; that said conveyance and operating contract described in the next preceding paragraph likewise included and embraced all of the land forming Blocks C, D, E. and F.

"VIII. That Federal Petroleum Company (of Louisiana) drilled and completed upon the acreage in Block A three (3) wells in which gas was discovered and which were located and completed as follows, to-wit:

"1. Serial #49, SW¼ of NE¼ of Section 15, Township 20, North Range 3 East, not completed but abandoned in December, 1920, at 2086 feet on account of bad condition in well;

"2. Serial #4676, SW¼ of NW¼ of Section 3, Township 20 North, Range 3 East, Completed on July, 15, 1919;

"3. Serial #322, NW¼ of NE¼ of Section 13, Township 20 North, Range 3 East, Completed in June, 1918, and abandoned on August 1, 1926, on account of bad condition of well;

which said wells just above referred to were drilled in consideration of and pursuant to the provisions of the conveyance and companion operating contract, both dated January 12, 1917, and which wells were conveyed to the Union Power Company, under the contract referred to in paragraph VIII of defendant's answer.

"That after the execution of the mineral conveyance and joint operating contract between Frost-Johnson Lumber Company, Union Saw Mill Company, Federal Petroleum Company, and Union Power Company, Inc., dated December 23, 1920, Union Power Company, Inc. drilled and completed upon the acreage in Block A five (5) wells in which gas was discovered and which were located and completed as follows; to-wit:

"1. Serial #7509, NW¼ of SE¼ of Section 29, Township 21 North, Range 4 East, Completed January 24, 1924;

"2. Serial #7508, NE¼ of NW¼ of Section 32, Township 21 North, Range 4 East, Completed January 14, 1924;

"3. Serial #7584, SE¼ of SE¼ of Section 31, Township 21 North, Range 4 East, Completed March 13, 1924;

"4. Serial #7687, SE¼ of NE¼ of Section 1, Township 20 North, Range 3 East, Completed March 18, 1924;

"5. Serial #7690, SE¼ of NE¼ of Section 2, Township 20 North, Range 3 East, Completed May 8, 1924;

and Union Power Company, Inc., likewise drilled and completed upon the acreage in Block C two (2) wells in which gas was discovered and which were located and completed as follows, to-wit:

"1. Serial #7507, NW¼ of NE¼ of Section 21, Township 21 North, Range 4 East, Completed May 22, 1924;

"2. Serial #7506, SW¼ of NE¼ of Section 21, Township 21 North, Range 4 East, Completed June 3, 1924;

and Union Power Company, Inc., likewise drilled and completed upon the acreage in Block D one (1) well in which gas was discovered and which was located and completed as follows, to-wit:

"1. Serial #7685, SE¼ of NW¼ of Section 5, Township 20 North, Range 4 East, Completed May 2, 1924.

"IX. That Interstate Natural Gas Company, Incorporated, drilled and completed

upon the acreage upon which it held such rights located in Block A twenty-three (23) wells in which gas was discovered and which were located and completed as follows, to-wit:

"1. Serial #10701, NW¼ of SW¼ of Section 23, Township 20 North, Range 3 East, Completed July 23, 1929;

"2. Serial #13234, NE¼ of SW¼ of Section 23, Township 20 North, Range 3 East, Completed December 14, 1929;

"3. Serial #13235, SE¼ of SW¼ of Section 23, Township 20 North, Range 3 East, Completed December 14, 1929;

"4. Serial #19154, SE¼ of NW¼ of Section 29, Township 21 North, Range 4 East, Completed September 3, 1936;

"5. Serial #19155, SE¼ of SE¼ of Section 25, Township 21 North, Range 3 East, Completed September 17, 1936;

"6. Serial #19162, SE¼ of SW¼ of Section 32, Township 21 North, Range 4 East, Completed September 15, 1936;

"7. Serial #19233, SW¼ of NW¼ of Section 31, Township 21 North, Range 4 East, Completed October 14, 1936;

"8. Serial #19201, NW¼ of SE¼ of Section 32, Township 21 North, Range 4 East, Completed August 24, 1936;

"9. Serial #19447, SW¼ of SW¼ of Section 30, Township 21 North, Range 4 East, Completed December 14, 1936;

"10. Serial #19448, NE¼ of NE¼ of Section 1, Township 20 North, Range 3 East, Completed December 28, 1936;

"11. Serial #19513, SW¼ of NE¼ of Section 1, Township 20 North, Range 3 East, Completed January 15, 1937;

"12. Serial #19514, SE¼ of SE¼ of Section 36, Township 21 North, Range 3 East, Completed January 18, 1937;

"13. Serial #19981, NW¼ of NW¼ of Section 29, Township 21 North, Range 4 East, Completed June 11, 1937;

"14. Serial #19982, SE¼ of SE¼ of Section 19, Township 21 North, Range 4 East, Completed June 28, 1937;

"15. Serial #19983, NE¼ of SW¼ of Section 20, Township 21 North, Range 4 East, Completed June 14, 1937;

"16. Serial #19984, NE¼ of NW¼ of Section 20, Township 21 North, Range 4 East, Completed July 14, 1937;

"17. Serial #19942, SE¼ of SW¼ of Section 29, Township 21 North, Range 4 East, Completed June 23, 1937;

"18. Serial #19906, NE¼ of SE¼ of Section 30, Township 21 North, Range 4 East, Completed June 1, 1937;

"19. Serial #20326, SE¼ of SE¼ of Section 1, Township 20 North, Range 3 East, Completed September 25, 1937;

"20. Serial #20418, NE¼ of NE¼ of Section 19, Township 21 North, Range 4 East, Completed October 4, 1937;

"21. Serial #20419, NE¼ of SE¼ of Section 25, Township 21 North, Range 3 East, Completed September 25, 1937;

"22. Serial #20487, NW¼ of SW¼ of Section 25, Township 21 North, Range 3 West, Completed , Begun August 23, 1937;

"23. Serial #20578, NE¼ of NW¼ of Section 31, Township 21 North, Range 4 East, Begun October 12, 1937 Completed ;

and Interstate Natural Gas Company, Incorporated, likewise drilled and completed upon the acreage, upon which it held such rights, located in Block B, three (3) wells, in which gas was discovered and which were located and completed as follows, to-wit:

"1. Serial #12334, SW¼ of NE¼ of Section 4, Township 19 North, Range 3 East, Completed January 22, 1929;

"2. Serial #13055, NW¼ of NW¼ of Section 33, Township 20 North, Range 3 East, Completed December 10, 1929;

"3. Serial #13369, NW¼ of SW¼ of Section 33, Township 20 North, Range 3 East, Completed March 18, 1930;

and Interstate Natural Gas Company, Incorporated, also drilled and completed upon the acreage, upon which it held such rights, located in Block D, one (1) well, in which gas was discovered and which was located and completed as follows, to-wit:

"1. Serial #19234, NW¼ of SW¼ of Section 5, Township 20 North, Range 4 East, Completed October 5, 1936;

and Interstate Natural Gas Company, Incorporated, also drilled and completed upon the acreage, upon which is held such rights, located in Block E, one (1) well, in which gas was discovered and which was located and completed as follows, to-wit:

"1. Serial #13109, SE¼ of NE¼ of Section 17, Township 20 North, Range 4 East, Completed December 20, 1929;

and Interstate Natural Gas Company, Incorporated, also drilled and completed up-

on the acreage upon which it held such rights, located in Block F, one (1) well, in which gas was discovered and which was located and completed as follows, to-wit:

"1. Serial #20145, SE¼ of NE¼ of Section 7, Township 20 North, Range 4 East, Completed July 26, 1937;

"X. That subsequent to the conveyance from Frost-Johnson Lumber Company of Missouri and Federal Petroleum Company to Union Power Company, Inc., evidenced by the conveyance and the companion joint operating contract, entered into between said parties, both dated December 23, 1920, hereinabove referred to, Union Power Company, Inc., the then owner of the wells theretofore drilled and completed by Federal Petroleum · Company, began with drawing gas therefrom, except as to well bearing serial #49 which never produced gas commercially, and subsequent to the completion of wells by Union Power Company, Inc., as hereinabove set out, it began the withdrawal of gas from such wells and continued to withdraw gas from all of the aforesaid wells from the date of the commencement of such withdrawal down to the date of the execution of the conveyance and operating contract in favor of Interstate Natural Gas Company, Incorporated, dated July 26, 1926; except as to well bearing serial #322 from which gas was withdrawn until its abandonment on August 1, 1926.

"XI. That shortly after the acquisition by Interstate Natural Gas Company, Incorporated, of the right to take and produce gas as set out in the instrument, dated July 26, 1926, it, Interstate Natural Gas Company, Incorporated, commenced to withdraw gas from the wells theretofore drilled by Federal Petroleum Company and Union Power Company, Inc., as set out above and has continued to withdraw gas therefrom down to the present time and shortly after the completion of each of the wells by Interstate Natural Gas Company, Incorporated, as set out in paragraph IX above, it began withdrawing gas, from said wells and has done so continuously from the commencement of the withdrawal of such gas down to the present time.

"XII. That Federal Petroleum Company addressed and sent to Frost Lumber Industries, Inc., the letter and plat described in paragraph XVII of defendant's answer, identified as defendant's exhibits G and H; that Frost Lumber Industries, Inc., did not join in and refused to participate in the drilling of said well for reasons set forth in the letter from Frost Lumber Industries, Inc. to Federal Petroleum Company, dated June 12, 1936, a copy of which is attached hereto; that said well was drilled to a depth of 7,019 feet and was completed on October 5, 1936, as a well producing gas only and was thereafter taken over and acquired from Federal Petroleum Company by Interstate Natural Gas Company, Incorporated, for a cash consideration paid by Interstate Natural Gas Company, Incorporated, amounting to Twelve Thousand, Five Hundred ($12,500.00) Dollars, which represented the cost of drilling said well to the gas producing horizon.

"XIII. That Federal Petroleum Company addressed and sent to Frost Lumber Industries, Inc., the letter and plat described in paragraph XVIII of defendant's answer, identified as Defendant's Exhibits I and J; that Frost Lumber Industries, Inc., did not join in and refused to participate in the drilling of said well for reasons set forth in the letter from Frost Lumber Industries, Inc. to Federal Petroleum Company, dated June 25, 1936, a copy of which is attached hereto; that said well was drilled to a depth of 4,558 feet and was completed on September 6, 1936, as a well producing gas only and was thereafter taken over and acquired from Federal Petroleum Company by Interstate Natural Gas Company, Incorporated, for a cash consideration paid by Interstate Natural Gas Company, Incorporated, amounting to Twelve Thousand, Five Hundred ($12,-500.00) Dollars, which represented the cost of drilling said well to the gas producing horizon.

"XIV. That on the map attached to defendant's answer and identified as Defendant's Exhibit K, the land described in defendant's answer as Block A is colored in yellow; that the land described as Block B is colored in lavender; that the land described as Block C is colored in pink; that the land described as Block D is colored in green; that the land described as Block E is colored in rose; and that the land described as Block F is colored in blue; and that the part of the land located in Blocks A, B, C, D, E, and F which were included in the mineral conveyance and contract entered into between Union Power Company, Inc., et al, and Interstate Natural Gas Company, Incorporated, under date of July 26, 1926, is outlined in brown; and that the wells referred to in

paragraphs VIII, IX, XI, and XII hereof are properly indicated on said map, those drilled by Federal Petroleum Company being indicated by red dots, those drilled by Union Power Company, Inc., being indicated by blue dots, and those drilled by Interstate Natural Gas Company, Incorporated, being indicated by black dots, the date of the completion of each of said wells being indicated by the figures under the aforesaid dots, and the name of the party who drilled said wells being indicated by the letters immediately beside the dots, the letter "F" standing for Federal Petroleum Company, the letter "U" standing for Union Power Company, Inc., and the letter "I" standing for Interstate Natural Gas Company, Incorporated.

"XV. That all sums of money which Federal Petroleum Company was obligated to pay to Frost-Johnson Lumber Company and to expend in development by virtue of the terms and provisions of the conveyance and joint operating contract entered into between said parties, both dated January 12, 1917, having been paid and expended, all as shown by the schedule hereto attached and hereof made a part, and identified as Defendant's Exhibit L.

"XVI. There is attached to and made a part of this stipulation of facts and shall be read and considered in connection therewith

"1. All of the documents annexed to the answer of defendant, Republic Production Company;

"2. Certified copy of act of conveyance from Union Saw Mill Company to Frost-Johnson Lumber Company, covering lands located in Union Parish, Louisiana, identified as Defendant's Exhibit M;

"3. Certified copy of act of conveyance from Union Saw Mill Co. to Frost-Johnson Lumber Co., covering lands located in Ouachita Parish, Louisiana, identified as Defendant's Exhibit N;

"4. Copy of letter addressed by Frost Lumber Industries, Inc. to Federal Petroleum Company, dated June 12, 1936, identified as Plaintiff's Exhibit A;

"5. Copy of letter addressed by Frost Lumber Industries, Inc. to Federal Petroleum Company, dated June 25, 1936, identified as Plaintiff's Exhibit B.

"XVII. That parties hereto further stipulate and agree that the foregoing stipulation of facts may be used by either party hereto on the trial of this cause in proof of the matters and things covered by the facts so stipulated.

"In faith whereof, this stipulation has been made and entered into by and between said parties on this, the 22nd day of June, A. D., 1938."

"Supplemental Agreement of Facts.

"It is hereby stipulated and agreed by the parties hereto as follows:

"1. That the Act of Conveyance referred to in sub-paragraphs A, B, and C of paragraph 3 of defendant's answer and the operating contract referred to in paragraph 6 of defendant's answer, and the joint operating contract referred to in paragraph 8 of defendant's answer, were all before this court in cause No. 694 in equity, entitled Frost Lumber Industries, Inc. v. Federal Petroleum Company, 20 F.Supp. 612, on the Equity Docket of this Court and are the same contracts referred to in paragraphs 2 and 4 of the agreed stipulation of facts signed by the parties herein.

"2. That there is annexed hereto copy of the judgment in cause No. 694 in Equity, which said copy is a true and correct copy of the judgment rendered in said cause.

"In faith whereof this stipulation has been signed by the parties on this the 22nd day of August, A. D., 1938."

 Under the law of Louisiana, a conveyance or reservation of the minerals under a tract of land, independently of the ownership of the soil, amounts only to a servitude, entitling the holder to go upon, explore for and remove the same from the lands for a period of ten years after the execution of the conveyance or act of reservation. Failure to exercise that right within the period mentioned releases the land from said servitude unless the owner has executed, in the meantime, some writing which conveys a clear intention to extend or renew such right, in which event the running of prescription begins anew for an additional period of ten years, except where otherwise, by express agreement, a shorter time is fixed.

Defendant Petroleum Company contends that as to the tracts designated as Blocks A, C and D, there was development or exercise of the servitude within the original period of ten years from January 12, 1917, to-wit, the drilling of a producing well by it in July 1919, and a non-producer in December 1920, the drilling by

the Union Power Company, its assignee, of five wells in January, March and May, 1924, and the drilling by the Interstate Natural Gas Company, Inc., assignee of the Union Power Company, of twenty-three producing wells in 1929, 1936 and 1937, all in Block A; the drilling of two producing wells by Union Power Company in May and June, 1924, in Block C; and in 1924 the drilling of one well in Block D. As to blocks B and E, defendant relies upon certain documents, executed by and between the parties or their privies, as extensions, renewals, or recognitions of the servitude, since no well was drilled upon either of these blocks prior to January, 1929.

■■ Each of the blocks so lettered (A, B, C, D, E and F), although covered by the original act of conveyance and operating agreement in 1917, were contiguous only in the sense that Blocks A and B touched in three places at corners; Blocks A and D touched at one corner and Block F touched blocks A and D at one corner each, respectively. It has been held by the State court that, since a point has no dimensions, it would be impossible to pass from one of these blocks so touching to the other without going upon lands not covered by the servitude, and for which reason, the exercise of the servitude upon one does not preserve it upon the other. See Lee v. Giauque, 154 La. 491, 97 So. 669; Keebler et al. v. Seubert et al., 167 La. 901, 120 So. 591; Arent v. Hunter, 171 La. 1059, 133 So. 157. Therefore, notwithstanding the tracts were, as stated, covered by the same contracts, there were as many distinct servitudes as there were separate bodies of land.

Defendant is plaintiff in the issue of title, and of course relies upon the fact that it and its assignees drilled wells upon Blocks A, C and D, from which gas has since been produced, to defeat the plea of prescription, and to sustain its right to continue to produce minerals from the lands in said blocks, even though such drilling was done not by itself but by the Union Power Company and Interstate Natural Gas Company, Inc., under their right to produce natural gas only. On the other hand, plaintiff in the suit states its position in its brief with respect to these three blocks, as follows: "It is the plaintiff's contention that while there was a mineral servitude created in favor of the Federal Petroleum Company of Louisiana,

by the Frost Companies, on January 12, 1917, of an undivided one-half interest in minerals in some 180,000 acres of land in Louisiana, including the lands in Blocks A, C and D, that this servitude as to the entire acreage was, by the parties to the sale of date, January 12, 1917, amended and modified so as to exclude gas, when said parties, on December 23, 1920, sold and conveyed to the Union Power Company all of the gas and gas rights lying in and under the said acreage."

■ I do not believe that a reasonable interpretation of the contracts and surrounding circumstances can sustain this argument of the plaintiff. The contract of conveyance to defendant's predecessor in 1917, embraced one-half of the minerals, and coupled with the operating agreement, permitted it to develop all or any part of the lands for the joint account of vendor and vendee. In this situation, the Federal Petroleum Company could have assigned to one person all or a part of its rights, or it could have transferred the right to explore for gas to one and those for oil or other minerals to others. Development by one or more would have been an exercise of the servitude under the original conveyance of 1917, sufficient to preserve its benefits upon every part of any continuous body of land. Plaintiff's counsel appears to recognize this fact, but seeks escape from the consequence upon the theory, as indicated by the excerpt quoted above, that there was the purpose to eliminate from the original servitude as between it and this defendant, natural gas, in the act of December 23, 1920. However, in that act of conveyance it appears that, in addition to declaring the vendors, including the Federal Petroleum Company, were the owners of the minerals in the proportion one-half each (gas only being conveyed to the Union Power Company), it was provided that the vendors should have free use of gas from any wells drilled by the Union Power Company in operations for other minerals. Simultaneously, with the execution of the conveyance, another agreement was entered into between the same parties, in which elaborate provisions were made, constituting in effect the grantors and grantee agents of each other in all developments, by requiring that if the Union Power Company, in its operations, should discover oil, such wells should be turned over to the grantors, at the cost of drilling and equipment and that the latter

should, in event of the discovery of gas. while drilling for oil, likewise turn over to the grantee such wells on the same terms; and further, if any well drilled by either grantors or grantee should produce both gas and oil, under circumstances from which each of these minerals could be profitably produced, then the former should receive the profits from the oil and the latter from the gas, upon terms as to the payment of costs and expenses unnecessary to. detail here. It was also stipulated that as to leases or properties upon which the payment of rentals should become due in lieu of actual drilling, the grantee should pay the same and charge one-half thereof to the grantors, payable at the end of each month in which said outlays were made by the grantee; that if the grantee should desire to abandon or decline to continue in force rights upon the property requiring the payment of rentals or drilling within a given time, the grantee · was required, upon notice to and request by the grantors, to make such payments or conduct such drilling at the cost of the grantors. Taxes upon the respective mineral rights were to be paid by the grantee, but refunds were to be made by the grantors, by "equitable adjustment". Further, it was provided that if either side should terminate its rights in any property covered by the transfer, the other should have the right to take over and continue the same by doing what was necessary therefor, but there was further reserved the right to each to "change its mind" at any time, so long as those rights remained in force and to re-acquire such interest by paying to the other side "double the amount which it may have expended in rentals, drilling or other proper expenses incident" thereto within a period named by the agreement. Each was to pay the rentals and royalties accruing upon any minerals produced by it. There were numerous other stipulations showing a clear purpose to continue a joint interest in the property or minerals covered by the conveyance and working agreement, including the right to the grantors to save, protect and acquire, if they desired, all the interest of· the grantee in the gas so conveyed. However, I think what has been mentioned is sufficient to show that there was no outright, unequivocal transfer of the gas rights, such as to establish either an amendment to or "ending" of the servitude on the part of plaintiff and defendant, in so far as that mineral was con-

cerned, or to create a new servitude with respect to it, distinct from other minerals, such as oil.

I am convinced, therefore, that the contention of plaintiff in this respect cannot be sustained and that the defendant has lost none of its rights in Blocks A, C and D.

As to Blocks B and E (as previously stated, defendant has abandoned any claim to rights in Block F), I think the situation is entirely different. There was no drilling upon either of these tracts until 1929, some twelve years after execution of the conveyance and operating agreement in 1917. The contention of defendants that the provisions or expressions in several documents indicated a renewal or purpose to extend the original servitude, is the same as that urged in the case of this plaintiff against this defendant, Frost Lumber Industries v. Federal Petroleum Co., decided by this court and reported in 20 F.Supp. 612. That decision was adverse to defendant and notwithstanding further argument orally and in brief, I see no reason to change my views, whether that case, from which no appeal was taken, be said to be res adjudicata or not.

My conclusion is that plaintiff is entitled to judgment, removing the cloud from its title as to all lands within Blocks B, E and F, and that in turn defendant should be decreed the owner of rights conveyed to it under the act of January 12, 1917, and the operating agreement of the same date, as to all lands in Blocks A, C and D, save and except such as it has since voluntarily transferred to others.

Proper decree should be presented.

### On Rehearing.

Both sides applied for a rehearing of this case and it was· granted upon all issues. It has been resubmitted on the same record.

However, after careful consideration, I am of the view that only the question of whether the sale by the plaintiff and defendant, or their predecessors, to Union Power Company on December 23, 1920, of the gas rights in the lands in question, constituted an acknowledgment of all the rights of defendant sufficient to interrupt the running of prescription as it applied to Blocks B and E, referred to in the original opinion, should be reviewed. I believe that the arguments made on behalf of plaintiff, with respect to the other tracts,

are substantially the same as those presented heretofore, with the additional suggestions, that, if the act of sale to Union Power Company, referred to above, is held to be an acknowledgement of the defendant's rights only under the transfer of 1917 and not the creation of a new servitude confined to gas, then at the end of the ten year period, during which the Federal Petroleum's rights were to run from 1917, the Union Power Company, in the absence of development, would have had only "one-half a servitude" as to the gas, while that flowing from the plaintiff would have continued until 1930. For this latter reason, it is insisted that plaintiff's contention that the legal effect of the act of 1920 was to create a new servitude, confined to gas, alone, must be maintained. As to this contention, I may say that it overlooks the fact that the plaintiff's joining in this sale had the effect of transferring to the Union Power Company, for the full life of the servitude under the Louisiana law, the rights of everyone connected with the property, since the plaintiff or its predecessors in title, were the owners of the fee, as well as one-half the minerals. Therefore if defendant's interest had reverted to plaintiff in 1927, the latter could scarcely have questioned the right of Union Power Company to exercise its servitude as to the gas.

Upon further consideration, I am convinced that there is no distinction, in principle, between the present case and those cited by defendant in its application for a new trial, except that they involve contracts of lease, with fixed periods running beyond the original ten year life of the servitudes, whereas in the sale to Union Power Company, although the time for exercising the rights was not fixed in the act, Codal provisions and interpretative jurisprudence have conclusively limited it to ten years. In Mulhern v. Hayne et al., 171 La. 1003, 132 So. 659, 660, the plaintiff had purchased from defendant certain lands, in which the latter reserved one-half the minerals, just as was done here. The servitude arising therefrom not having been exercised, after approximately seven years, both parties "joined * * * in the execution of an oil and gas lease, affecting the entire property" to a third person, which, through mesne conveyances, passed to one of the defendants in that suit. There was no drilling or exercising of the servitude within the original period of ten

years, which began with the reservation of one-half the minerals in the sale of defendants to plaintiff and the conventional time of the subsequent lease had not expired when the suit was filed. The case went up from a judgment sustaining an exception of no cause of action. By agreement, in submitting the exception, the lease in which both parties had joined in favor of the third person was offered and considered and on its face showed that it had not expired when the suit was filed. In disposing of the matter, the Supreme Court of the State said:

"This court has heretofore adjudicated several cases in which it is held that a reference in a deed to a prior reservation of mineral rights is not such an acknowledgment as would interrupt an accruing prescription. It was so held in Lewis v. Bodcaw Lumber Company, 167 La. 1067, 120 So. 859, and in La Del Oil Properties, Inc. v. Magnolia Petroleum Co., 169 La. 1137, 126 So. 684.

"This case, however, is entirely different from the Bodcaw and La Del Cases. Here there is no deed in which reference is made to the ownership of minerals reserved in a prior deed. Here the plaintiff, as the owner of one half of the minerals, joined the persons in whose favor the other half of said mineral rights had been reserved, in the execution of a lease, of all the oil and gas, to a third person, for a term of years extending beyond the prescriptive period, and to an indefinite future period, beyond that time, in the event oil or gas is produced from the leased land. By joining in this lease plaintiff thereby recognized all of the rights of his colessors, and he cannot escape the effect of his written acknowledgment, which, in our opinion, we must hold to be an interruption of the then accruing prescription.

" 'Prescription ceases likewise to run whenever the debtor, or possessor, makes acknowledgment of the right of the person whose title they prescribed.' C.C. art. 3520.

"In the case of Nabors Oil & Gas Company v. Louisiana Oil Refining Company, 151 La. [361] 397, 91 So. 765, 778, this court held as follows:

" 'The period of prescription may be interrupted by a written acknowledgment on the part of the obligor; but, when so interrupted, it begins anew from the date of the acknowledgment.'

966

"Plaintiff's suit is based upon the ten-year prescription liberandi causa. The pleadings affirmatively show that the lease from plaintiff and his colessors to the Louisiana Petroleum Corporation was recorded more than two years before the expiration of the prescriptive period pleaded in this suit. We are of the opinion that the judgment appealed from is correct. The plaintiff has cited many authorities' adjudicating issues which are not raised in this case, viz., the holder of a mineral lease has only the right to extract the minerals from the soil; this right is a servitude prescribed by nonuser of ten years; and the burden of proving use during the prescriptive period is upon the holder of the right."

It is true that in the cited case, the lease which the joint owners executed included both oil and gas, whereas in the present instance the conveyance to the Union Power Company was of gas alone, but it would seem illogical, I think, to say that this act constituted the acknowledgment in writing contemplated by the Code and decisions of the Court, while the one now under consideration (dated December 23, 1920) did not, merely because only a part of the rights or servitude under the original reservation was conveyed. It was as much necessary to recognize the first act or rights acquired thereunder in the one instance as in the other, and I do not see how the subsequent transfer could have been made without admitting the existence of the source of the vendor's (Federal Petroleum Company) interest. See also Bremer v. North Central Texas Oil Company et al., 185 La. 917, 171 So. 75. I am, therefore, convinced that the defendant is entitled to have its rights maintained in the said Blocks B and E. This serves to remove the supposed incongruity suggested in the brief by counsel for plaintiff, that the Union Power Company, under the transfer of December 23, 1920, would have had only half a servitude at the end of the first ten year period. As stated in the former opinion, the defendant or its assignees drilled a number of wells in 1929 and 1930, well within the ten year period, beginning December 23, 1920.

For the reasons assigned, the finding in favor of defendant heretofore made should be amended so as to include Blocks B and E, and as so amended, the judgment is reinstated and made final.

Proper decree should be presented.