(120 So. 591)

No. 28953.

KEEBLER et al. v. SEUBERT et al.

Jan. 28, 1929.

Rehearing Denied Feb. 25, 1929.

J. W. Elder, of Farmerville, for appellants.

Stubbs & Thompson, of Monroe, for appellees John Seubert, Harro, and Scharbau.

C. B. Taugher, of Milwaukee, Wis., for appellees Mrs. Frances Seubert and Seubert heirs.

George Wesley Smith, of Rayville, and Frederick E. Greer and J. S. Atkinson, both of Shreveport, for appellees Gulf Refining Co. of Louisiana and Hunter.

OVERTON, J. On April 5, 1917, Andreas Seubert, by warranty deed, conveyed to Gustave L. Carriere lands in Richland parish, comprising 923 acres. The deed, which was duly and promptly recorded, contains a reservation as to mineral rights, reading as follows:

"It is agreed between the parties hereto that there is excepted and reserved from the sale herein made all the mineral, oil and gas rights upon the property hereinabove described, they forming no part of this conveyance. It is further agreed between the said parties, that the vendor herein, his heirs, executors, administrators or assigns, shall have full right of ingress and egress to and from said lands for the purpose of exploiting all of such mineral, oil and gas rights, and for the purpose of operating said mineral, oil and gas rights in the event of the successful exploration thereof; the right to construct wells, mines, oil and gas pipe lines, trams, roads, tanks and reservoirs and any and all works in order to explore said lands for oil, gas and minerals, and to remove and manufacture, refine or smelt, same being hereby retained by the said vendor, for himself and for and on behalf of his heirs, executors, administrators or assigns and being so specially granted by the said purchaser, but due regard shall always be had for the rights of the owners of the surface of said land and as little injury to such surface shall be done as possible."

On February 20, 1920, Carriere sold 560

acres of the land, acquired by him from Seubert, to plaintiffs herein, excepting the plaintiff, Charles F. Dutton, who acquired his interest from one of the other plaintiffs. On March 6, 1918, Andreas Seubert, sold all the foregoing mineral rights, reserved by him, to John Seubert, who sold a one-half interest in those rights to Johann Seubert. John and Johann Seubert sold an interest, in the rights reserved, to Louis Scharbau. Johann Seubert died intestate on March 16, 1923, survived by his widow and children, who, together with John Seubert and Scharbau, are named as defendants in this suit. On November 22, 1926, John Seubert, Scharbau, and the widow and heirs of Johann Seubert granted to the Gulf Refining Company of Louisiana a lease of all the rights held by them, under the foregoing reservation, on the land now owned by plaintiffs. On November 22, 1926, the Gulf Refining Company assigned the lease to S. D. Hunter, in so far as it relates to oil and gas rights, and Hunter, shortly thereafter, reassigned parts of the lease to the Gulf Refining Company. The Gulf Refining Company and Hunter are named as defendants in the case.

The object of this suit is to have it decreed that the reservation, made by Andreas Seubert, in his deed to Carriere, of the mineral rights, has been lost by the prescription liberandi causa of ten years, and that, with the loss of that reservation, the lease, held by the Gulf Refining Company and Hunter, has fallen.

Three distinct reasons have been pleaded and assigned as to why the reservation has not been lost by the prescription of ten years. We find it necessary to consider only one of them. That reason is that the prescription pleaded has not accrued, because the rights reserved have been exercised within the prescriptive period by exploiting the land for oil and gas, and therefore that the course of the prescription urged has been interrupted.

It does not admit of question that the land was exploited under the reservation for oil and gas within ten years after the reservation was made. The reservation was made on April 5, 1917. On December 6, 1296, Hunter, who had acquired a part of the lease from the Gulf Refining Company, made location on a part of the land for the well known as Hunter-Seubert No. 1, and erected there a derrick on December 10, 1926, and immediately thereafter began installing machinery for the boring of the well, and dug a slush pit. The actual drilling of the well was begun on January 3, 1927, and on March 1, 1927, the well having reached a depth of 2,-377 feet, which was slightly deeper than a well on neighboring land, which had proved successful as a gas producer, a test was made, which showed a small amount of gas, but not in commercial quantities. On another part of the land, on March 2, 1927, location was made by the Gulf Refining Company of the well known as Gulf-Seubert No. 2. The machinery for drilling was installed at this location, the pit was dug, gas and water lines laid, and the actual drilling begun on April 1, 1927, four days before the expiration of ten years from the making of the reservation, and notwithstanding the institution of this suit five days later, operations were conducted continuously to a depth of 2,003 feet, when they were suspended on May 5, 1927, on account of the flood of that year.

The lands conveyed by Andreas Seubert to Carriere, on which the reservation was made, consist, it is said, of three noncontiguous parcels, in two of which lie the lands belonging to plaintiffs. Plaintiffs concede that of the two wells, mentioned above, one was drilled on each of the two parcels of which their land forms part. Certain oil and gas operations were begun on the third parcel that constituted a part of the original Seubert conveyance, but we do not mention them, because, as observed in effect, in Lee

v. Giauque, 154 La. 491, 97 So. 669, operations on that parcel could not interrupt prescription as to the other parcels, as that parcel was not contiguous to the others.

■■ Where a vendor reserves the right, in conveying land, to exploit the land for minerals, the reservation is the retaining of a servitude on the land for that purpose. Frost-Johnson Lumber Co. v. Salling's Heirs, 150 La. 756, 91 So. 209; Wemple v. Nabors Oil Co., 154 La. 483, 97 So. 666; Lee v. Giauque, 154 La. 491, 97 So. 669. Where the reservation is made in a deed conveying two or more distinct tracts of land, the reservation is considered as the retaining of as many servitudes as there are tracts of land. Lee v. Giauque, supra. Therefore the reservation made by Andreas Seubert in the conveyance by him to Carriere, concerning the mineral rights, was the reservation of three distinct servitudes, three tracts having been conveyed upon which the reservation was made, one of which servitudes is not involved here.

Article 789 of the Civil Code provides that "a right to servitude is extinguished by the nonusage of the same during ten years," and article 3546 thereof is to the same effect. See, also, Wemple v. Nabors Oil & Gas Co., supra, and Lee v. Giauque, supra.

The servitude reserved by Andreas Seubert was the right to exploit the lands, conveyed by him, for oil, gas, and other minerals, and, in the event he discovered any of them, to appropriate those discovered and reduced to possession.

■ Where a person, owning such a servitude, enters upon the land to which the servitude attaches within the ten-year period, and there, in good faith, drills wells for the purpose of exploiting for minerals, he is thereby exercising the right reserved by him, or using the servitude retained, within that period, for the purposes, for which it was retained. The right to the continued use of the servitude retained is not dependent upon

the successful outcome of the exploiting, unless it be made so by contract.

When the Gulf Refining Company and Hunter entered upon the lands conveyed, and sank wells for oil and gas, they were exercising the servitudes, on the lands here involved, retained by Andreas Seubert, and now held by their codefendants. When these operations began, the ten-year period had not elapsed. There is nothing justifying the conclusion that the operations were not conducted in good faith. In fact, the operations cost considerable.

But plaintiffs argue that, because the operations were not successful, prescription was not interrupted. Their theory is that minerals must be extracted from the land to make the operations conducted a using of the servitudes, and they cite, in support of this theory, article 799 of the Civil Code, to the effect that, "if the owner has merely enjoyed an accessory right, which was necessary to his right of servitude, he will not be considered as having used his right of servitude." However, the right reserved here was the right to exploit the land for oil, gas, and other minerals, and in the event of their discovery to appropriate them. The right to exploit was not an accessory right. It was not known whether there were any minerals on the land that could be extracted, or not, when the reservation was made. None have been discovered as yet.

Our conclusion is that the prescription of ten years has not accrued as to the servitudes on the lands involved here. We think that we are supported in this ruling by Lee v. Giauque, supra. It is clear, from the reading of the opinion in that case, that the court paid no regard as to whether the "oil well" there drilled was successful or not. It was the drilling of the oil well that was there held to preserve the servitude. As a matter of fact, the well in that case was not a success.

The judgment of the lower court herein was in favor of defendants.

For the reasons assigned, the judgment appealed from is affirmed.

THOMPSON, J., recused.