171 So. 75

BREMER v. NORTH CENTRAL TEXAS OIL CO., Inc., et al.

No. 33979.

Nov. 4, 1936.

Rehearing Denied Nov. 30, 1936.

Foster, Hall, Barret & Smith, Coleman & Miazza, and Tucker & Mason, all of Shreveport, for appellants.

Cook, Cook & Egan, of Shreveport, for appellee.

ODOM, Justice.

Plaintiff, on Jannary 1, 1924, owned and still owns in fee, certain lands in the parish of Caddo. On that date he sold to Arthur Andrews an undivided one-half interest in all of the oil, gas, and other minerals in and under the said lands. An error in the description of the lands was corrected by written instrument on June 30 following.

This suit was brought by Bremer, the landowner, on January 6, 1936, to cancel the servitude granted to Andrews because of nonusage for ten years. R.C.C. art. 789. He alleged that the servitude granted by him was not exercised by Andrews nor any one who held under him by transfer or otherwise for a period of more than ten years from the date of the grant, and was therefore lost by prescription. The prescription of ten years as provided by article 789 of the Revised Civil Code was expressly pleaded.

Plaintiff alleged that certain persons and corporations who claim to have succeeded Andrews are asserting rights under the servitude and that their claims operate as a cloud upon his title, and prayed for judgment recognizing him to be the owner of the land free from any claims of the defendants to any interest in the minerals in and under said lands, and decreeing that said servitude had been lost by ten years' prescription for nonusage.

Defendants, who hold under the Andrews grant, filed answer in which they admitted substantially all the allegations of the petition except that which sets out that the servitude had been lost by prescription of ten years. As to that allegation, they specially pleaded that prescrip-

tion was interrupted on November 28, 1925, by the execution on that date of a joint oil and gas lease by the plaintiff, Bremer, and J. A. Caldwell and W. T. Hindman to A. A. Andrews, covering the land in question. They alleged that the prescription then running in favor of Bremer was interrupted by his act in. joining the others in making the lease and that the prescription invoked by plaintiff should be decreed to run, not from the date the servitude was granted, but from the date plaintiff and the others executed the lease to Andrews, on November 28, 1925. They further alleged in answer that drilling operations for the production of oil and gas were begun on the land on August 1, 1935, or within ten years from November 28, 1925, the date on which the lease was granted, which operations again interrupted prescription.

There was a judgment in the district court for the plaintiff, recognizing him as the owner of the land and decreeing that the servitude granted by him to Andrews had been lost because of nonusage for ten years. The defendants appealed.

The servitude granted by Bremer to Andrews was dated February 24, 1924, but was corrected on June 30 following. Therefore, ten-year prescription began to run in favor of Bremer on the latter date. The servitude was not exercised within ten years from that date, and it is conceded that it expired on June 30, 1934, unless prescription was interrupted prior to that date. The only question then is whether prescription was interrupted.

We do not think it was. Article 3520 of the Revised Civil Code reads as follows:

"Prescription ceases likewise to run whenever the debtor, or possessor, makes acknowledgment of the right of the person whose title they prescribe."

In support of their contention that the servitude has not been lost by nonusage for ten years, the defendants invoked the provisions of this article and say that Bremer made "acknowledgment" of the right of Caldwell and Hindman, who owned the servitude, when he joined them in the making of the oil and gas lease dated November 28, 1925. The contention is based upon their theory that Bremer's joining in the lease contract was an "acknowledgment of the right" or title of the owners of the servitude which he granted, and that such acknowledgment constituted an interruption of prescription.

Over the objection of counsel for defendants, Bremer was permitted to testify that he did not in fact join Caldwell and Hindman, the owners of the servitude, in an agreement to make the oil and gas lease dated November 28, 1925, and that he did not sign the lease with them. Counsel for plaintiff, therefore, argue that this was not a joint lease.

A photostatic copy of the lease contract is in the record. It shows the names of Bremer, Caldwell, and Hindman written in as lessors and the name of A. A. Andrews as lessee. This gives rise to a reasonable presumption that the leasing of the property for oil and gas was a joint

act of the three, and for the purpose of this decision we shall so consider it.

The only evidence of an interruption of prescription offered by the defendants was the copy of the lease contract which was filed in evidence. But even if it be conceded, as counsel for defendants argue, that Bremer's act in joining Caldwell and Hindman in making the lease was an acknowledgment by him of their rights, such acknowledgment did not necessarily operate as an interruption of prescription.

It is conceded by both sides that, when Bremer sold to Arthur Andrews an undivided one-half interest in the minerals in and under his land, he granted to Andrews a right in the nature of a servitude, which is extinguished by nonusage of the same during ten years under article 789 of the Revised Civil Code, and it is further conceded that this ten-year prescription ceases to run when the possessor of the land burdened with the servitude "acknowledges" the rights of those in whose favor the servitude runs; that an "acknowledgment" interrupts prescription. C. C. art. 3520.

But article 3520 of the Code, which says that prescription ceases to run whenever the debtor or possessor "makes acknowledgment of the right of the person whose title they prescribed," does not mean that a mere acknowledgment of the existence of the rights of those in whose favor the servitude runs interrupts prescription. There must be more than a bare acknowledgment; the acknowledgment must

be accompanied by or coupled with "the purpose and intention of the party making the acknowledgment to interrupt the prescription then running."

Such was the opinion of every member of this court when the case of Frost Lumber Industries, Inc., v. Union Power Co., Inc., 182 La. 439, 162 So. 37, was decided on April 1, 1935. We reached that conclusion after an exhaustive review of the jurisprudence on the subject.

There is nothing in this lease contract to show or even indicate that Bremer intended to interrupt the running of prescription in his favor, and, as we have said, the contract itself was the only evidence offered by defendants.

Counsel cite and rely on the case of Mulhern v. Hayne et al., 171 La. 1003, 132 So. 659, and call attention to the fact that in the Frost Case, supra, we did not refer to the Mulhern Case, and suggest that there is a conflict in the two cases. Each case was decided right and there is no conflict. In the Mulhern Case defendants sold to him certain lands and reserved one-half the minerals. That was on February 24, 1919, on which date the ten-year prescriptive period began to run in favor of Mulhern, the owner of the land. Seven years and five months later, or when the prescriptive period had but two years and seven months to run, Mulhern joined the defendants, who were then the owners of the servitude, in the execution of an oil and gas lease affecting the entire property, which lease ran for

a period of five years from its date, or for two years and seven months beyond the expiration of the ten-year prescriptive period, which prescription was running in Mulhern's favor at the time. We held that Mulhern's joining the owners of the servitude in the execution of the oil and gas lease was an acknowledgment by him of their rights and interrupted prescription. This was upon the theory that Mulhern's joining the others in the lease contract, which by its terms expired on a date beyond the end of the ten-year prescriptive period, evidenced a purpose and intent on his part to interrupt the running of prescription in his favor; that his execution of the lease under the circumstances was not only an acknowledgment of the existence of the rights of the owners of the servitude, but in fact a consent that they have further time within which to exercise those rights. Manifestly the life of the servitude had to be extended to. make the five-year lease valid for that length of time.

On further consideration we adhere to our ruling in that case, but it has no application to the case presently under consideration. Here the lease was dated November 28, 1925, was for a period of only three years, and by its terms expired on November 28, 1928, or more than five years prior to the end of the ten-year prescriptive period. There was, therefore, nothing in the lease to indicate that Bremer intended to interrupt prescription.

The judgment is affirmed, the defendants to pay all costs.