**FROST LUMBER INDUSTRIES, Inc., v. REPUBLIC PRODUCTION CO.**

No. 9438.

Circuit Court of Appeals, Fifth Circuit.

May 29, 1940.

Rehearing Denied July 8, 1940.

463

Elmo P. Lee, of Shreveport, La., for appellant.

Alden T. Shotwell, of Monroe, La., and T. J. Arnold, of Houston, Texas, for appellee.

Before SIBLEY, HUTCHESON, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

The suit was, in effect, to recover one-half the minerals other than gas on six non-contiguous blocks of land, A, B, C, D, E and F,[1] in Union and Ouachita Parishes, free from the servitude which had been created in favor of Federal Petroleum Company, defendant's predecessor in title. The claim stated generally was that by the operation of the prescription, liberandi causa of ten years' non-use, the servitude as to all of the blocks had been lost. Stated more particularly, the claim was first: that while a mineral servitude of one-half interest had indeed been created on January 12, 1917, in favor of defendant's predecessor, by the Frost Interests, plaintiff's predecessor in title, in all the minerals in some 180,000 acres of land in Louisiana, including the lands in Blocks A, C and D, and in Blocks B, E, and F, this servitude was as to all the blocks, amended and modified by the parties to its creation, so as to exclude from it and make a new servitude as to gas, when said parties jointly and by warranted title, sold and conveyed to the Union Power Company on December 28, 1920, all of the gas and gas rights lying in and under the said acreage, and there having been no development of the remaining minerals the servitude as to them had been lost by non-use. And second, if this was not so as to all the

[1] Block A contains 38,800.44 acres; Block B, 9098.07 acres; Block C, 128.36 acres; Block D, 626.89 acres; Block E, 19 acres and Block F 119.94 acres. Each block while separate and distinct from every other, in itself forms an undivided and contiguous tract.

464

blocks, it was so as to Blocks B, E and F, since no use had been made of the servitude as to them until more than ten years after, January 12, 1917.

Defendant denied that the effect of the joint sale by the Frost Interests and the Federal Petroleum Company to the Union Power Company on December 23, 1920, of all the gas and gas rights under said lands was to create a new and separate servitude. It insisted that, insofar as the Federal Petroleum Company was concerned, this was a mere assignment of part of the benefits of the original servitude, and the operations of its assignee had kept the whole servitude in force in each block where timely operations had occurred. Conceding, however, that by ten years' non-use it had lost its rights as to Block F and that it has lost them too as to Blocks B and E, unless the December 23, 1920, instrument was such an acknowledgment of the servitude as to interrupt the running of prescription, defendant insisted that it did constitute such an acknowledgment. The District Judge agreed with defendant as to the effect of the December, 1920, instrument and found for it except as to Tract F. Plaintiff is here complaining that the decision is contrary to both the plain provisions of the Code and the jurisprudence under it. The facts are stipulated.[2] The parties are in agreement, too, as to the general postulates by which the case is ruled. The difficulties in deciding it arise out of the conflicting views as to the result that ought to follow the application of these settled principles to the agreed facts. This of course is true of many cases. The rub is particularly close and difficult here. These principles may be briefly summarized.

---

[2] On January 12, 1917, plaintiff's predecessors in title, sold and conveyed to the Federal Petroleum Company of Louisiana the defendant's author in title, an undivided one-half interest in the minerals under the lands described in plaintiff's petition, together with a like interest in the minerals in a large acreage located elsewhere in Louisiana and in Arkansas, owned by the vendors, in all about 67,591 acres in Arkansas and about 180,000 acres in Louisiana, in the Parishes of De-Soto, Sabine, Natchitoches, Ouachita and Union. The lands in question here are in *Ouachita and Union Parishes.* (Italics supplied.)

On the same date, a joint operating agreement was entered into by the parties for development by any one or all of them of all or any part of the lands described in the contract of sale.

On December 23, 1920, plaintiff's and defendant's predecessor in title, jointly sold and conveyed to the Union Power Company, a Louisiana Corporation, all the gas and gas rights under the lands embraced in the contract of date, January 12, 1917, hereinabove referred to, entering at the same time into a joint operating agreement for development by the vendors of the lands described therein for the minerals other than gas, and by the Union Power Company for the gas, to be found therein.

This agreement provided that if oil was found and produced by the grantee in developing the lands for gas, that the grantors, owners of the minerals, other than gas, could take the well over by reimbursing grantees for the cost of drilling the same and if in drilling for minerals other than gas, gas was found and produced by grantors, then grantee could take over the well by reimbursing the cost of its drilling and that should grantee or grantor fail to reimburse the other for the drilling, the oil well in the one case, the gas well in the other, should belong to the driller of it.

Prior to December 23, 1920, the date of the sale of the gas and gas rights to the Union Power Company, Federal Petroleum Company completed three gas wells upon the properties involved in this litigation, all of them being upon the acreage in Block A. The first well was completed in June of 1918, the second on July 15, 1919, and the third on October 11, 1919. These three gas wells, together with the gas rights, were conveyed in the 1920 sale, from the Frost interests and the Federal Petroleum Company to the Union Power Company, and Union Power Company, after acquiring the gas rights, drilled and completed, prior to 1924, five gas wells upon lands in Block A, and in 1924 it drilled and completed two gas wells upon the lands in Block C and one in Block D.

Its successor in title, Interstate Natural Gas Company, Inc., which in July of 1926 had acquired the gas and gas rights in and under a large part of the lands, drilled and completed upon acreage in Block A, twenty-three gas wells. Three of these were drilled and completed in the year 1929. The remaining twenty were drilled and completed in 1936 and 1937. It likewise drilled and completed in Block B, three gas wells, two in 1929, one in 1930, in Block D, one well in 1936, in Block E, one well in 1929, and in Block F, one well in 1937.

A conveyance by a landowner to another of the oil, gas and other minerals on, in and under the land, together with rights of ingress, egress and occupancy for purposes of exploitation, is not a grant or alienation of a title to such minerals in place, but simply creates in the grantee a servitude or right of exploitation or development, prescribable in ten years for non-use, of such minerals and the right to appropriate such minerals as may be discovered and reduced to physical possession.[3]

The ten-year prescription ceases to run when the possessor of the land burdened with the servitude acknowledges the rights of those in whose favor the servitude runs. R.C.C. Article 3520. But a mere acknowledgment of the existence of the rights of those in whose favor the servitude runs is not enough. The acknowledgment must be accompanied by or coupled with "the purpose and intention of the party making the acknowledgment to interrupt the prescription then running." *Bremer v. North Central Texas Oil Company,* 185 La. 917, 171 So. 75, 77.

Servitudes are indivisible but the advantages or benefits resulting from the use or exercise of the servitudes are susceptible of division.[4]

A grant of minerals creates as many separate servitudes as there are separate tracts of land involved; but, as to each continuous and contiguous tract, regardless of its size, there exists but one servitude; and the exercise of the servitude upon any part of such tract preserves the servitude as to the whole tract.[5]

Under Louisiana law servitudes on non-contiguous tracts of lands, although embraced in one instrument, are treated as separate and distinct servitudes and the development of the servitude on one tract is not the development of the servitude on the non-contiguous tract.[6]

When one enters upon the land on which the servitude exists within the ten-year period and there, in good faith, drills wells for the purpose of exploiting for minerals, he is thereby exercising the rights held by him or using the servitude owned, within that period, for the purpose, for which it was granted. The right to the continued use of the servitude is not dependent upon the successful outcome of the exploiting, unless it is made so by contract.

To preserve the right of servitude and prevent prescription from running against it, it is not necessary that it should be exercised exclusively by the owner to whom it is due, or by those who use his rights or who represent him directly, as the usufructuary, lessee or tenant, the attorney in fact or agent. It suffices if the servitude has been exercised by workmen employed by the owner, by someone acting in his right, "or by his friends, or those who come to see him."[7]

When the owner of a mineral servitude leases the same to third parties and they go upon the land and sink wells for the discovery of minerals, they (the lessees)

---

[3] Frost Johnson Lumber Co. v. Salling's Heirs, 150 La. 756, 91 So. 207; Wilkins v. Nelson, et al., 155 La. 807, 99 So. 607; Clark v. Tensas Delta Land Co., 172 La. 913, 136 So. 1; Louisiana Petroleum Co. v. Broussard et al., 172 La. 613, 135 So. 1; Keebler v. Seubert, 167 La. 901, 120 So. 591; Patton et al. v. Frost Lbr. Industries, Inc., et al., 176 La. 916, 147 So. 33; Lieber v. Ouachita Natural Gas & Oil Co., 153 La. 160, 95 So. 538; Bodcaw Lbr. Co., Inc., v. Cox, 159 La. 810, 106 So. 313; Frost-Johnson Lbr. Co. v. Nabors Oil & Gas Co., 149 La. 100, 88 So. 723.

[4] Clark v. Tensas Delta Land Co., supra; Sample v. Whitaker, 172 La. 722, 135 So. 38; Holladay v. Darby, 177 La. 297, 148 So. 55; Civil Code Articles, 656 and 657.

[5] Lee v. Giaque, 154 La. 491, 97 So. 669; Keebler v. Seubert; Patton v. Frost Lbr. Industries, Inc., supra.

[6] Lee v. Giaque, 154 La. 491, 97 So. 669; Keebler v. Seubert, 167 La. 901, 120 So. 591; Arent v. Hunter, 171 La. 1059, 133 So. 157; Frost Lbr. Industries, Inc., v. Union Power Co., Inc., 182 La. 439, 162 So. 37; Coyle v. North Central Texas Oil Co., 187 La. 238, 174 So. 274; Cox v. Acme Land & Inv. Co., 192 La. 688, 188 So. 742, 743.

[7] Lee v. Giaque; Arent v. Hunter; Louisiana Petroleum Co. v. Broussard; Keebler v. Seubert; Patton v. Frost Lbr. Industries, Inc., supra; Johnson v. Moody, 168 La. 799, 123 So. 330; Smith v. Sun Oil Company, Inc., 165 La. 907, 116 So. 379; Civil Code, Articles 793 and 794

are thereby exercising the rights of servitude held and enjoyed by their lessor, thereby preventing the running of prescription against their lessor's rights.[8]

When the owner of a mineral servitude enters upon the lands subject to such servitude, either himself or through his lessee, or one acting under his authority, and there digs or mines for minerals and discovers and produces any mineral whatsoever, he thereby preserves his servitude in its entirety inasmuch as the servitude is the right to exploit or develop, and as such is indivisible.[9]

"When the estate to which the servitude is due ceases to be undivided, by means of a partition, each of those who were the coproprietors, only preserves the servitude by the use he makes of it, and the others lose it by nonusage during the time required for prescription.

"If a servitude be due to several persons, but on different days, as the right of drawing water, he who does not exercise his right, loses it, and the estate subject to the servitude becomes free from it, as respects him." R.C.C. art. 803.

Appellant insists that, under these principles, the legal effect of the December, 1920, instrument, was to dismember the servitude, removing and eliminating therefrom, the mineral, gas, and to create a new and independent servitude as to the gas alone, so that thereafter operations for gas proceed under and are referable solely to the new servitude and can not be counted as a use of the original servitude, preserving it, as a whole, and all the minerals it embraced, from loss by non-use.

Appellee as strongly insists that there has been no dismemberment, no partition of "the estate to which the servitude is due," but merely a division of the advantages and benefits of the servitude and that under the principles above set out, the development for gas on Blocks A, C and D, as to which there has been no ten-year period of non-use, has preserved the whole servitude as to those blocks. While as to tracts B, C, and F, appellee, admitting that F has been lost by non-use, insists that B and E have been preserved because though the servitude was created in 1917 and the first use as to these tracts was in 1929 and 1930, the ten-year prescription under the 1917 instrument ceased to run with the execution of the 1920 instrument.

In support of its first contention that the 1920 instrument did not dismember the original servitude, appellee relies strongly on Louisiana Petroleum Co. v. Broussard, 172 La. 613, 135 So. 1; Keebler v. Seubert, 167 La. 901, 120 So. 591; Holloday v. Darby, 177 La. 297, 148 So. 55; Sample v. Whitaker, 172 La. 722, 135 So. 38, and particularly on Patton v. Frost Lumber Industries, 176 La. 916, 147 So. 33, which case, appellee says, decided the very question at issue here.

On its second position, appellee relies on Mulhern v. Hayne, 171 La. 1003, 132 So. 659; Bremer v. North Central Texas Oil Company, 185 La. 917, 171 So. 75; Frost Johnson Lumber Company v. Nabors Oil & Gas Company, 149 La. 100, 88 So. 723; and Frost Lumber Industries v. Union Power Company, 182 La. 439, 162 So. 37. Appellant, citing the same cases and insisting that they support it rather than appellee, urges that the judgment was wrong and should be reversed.

We agree, not with appellant, but with appellee and the District Judge. We think it quite clear that the 1920 instrument did not purport to nor did it partition or divide either, "the estate to which the servitude is due," or the servitude itself. The servitude was granted to the Republic Production Company in indivision and it continued to be so owned by it and its successors. The 1920 instrument did not purport to divide it. It only divided the advantages or benefits resulting from its use. If there had been nothing more than the 1920 instrument of conveyance we think it would have been a strained view of what the parties did, to say that the grantors thereby recalled for dismemberment and dismembered the original servitude in order to make two. But the instrument of conveyance was by no means all. There was, in addition, an operating agreement which made it clear and plain that at no time was dismemberment intended but there was a direct and positive purpose to protect, preserve and continue the whole of the original servitude. The provisions

[8] Keebler v. Seubert; Lee v. Giaque; Arent v. Hunter; Patton v. Frost Lbr. Industries, Inc.; Johnson v. Moody; Smith v. Sun Oil Company; Frost Johnson Lbr. Co. v. Nabors Oil & Gas Co., supra.

[9] Patton v. Frost Lumber Industries, Inc.; Wilkins v. Nelson; Arent v. Hunter, Lee v. Giaque, supra.

for the drilling of oil wells by grantees and of gas wells by grantors with consequent obligations on and rights in each, put it beyond question, under the authorities appellee cites, particularly Patton v. Frost, 176 La. 916, 147 So. 33, that the original servitude was preserved for both oil and gas, not dismembered but intact, and that by the 1920 transfer, the owners of the original servitude and its estate merely made new means for their use and enjoyment.

The second proposition is made more difficult of determination not only by the strict construction the Louisiana decisions give to the Code provisions for the interruption of the running of prescription, but by a kind of uncertainty in their sound. But, strict as they are and uncertain as they sound, they support the view of the District Judge and of appellee, that the 1920 writings of conveyance and for development, with their entire and complete recognition and provision for continuing the rights of Republic were intended to be, and were, a sufficient acknowledgment under Louisiana law to stop the running of prescription.

The District Judge and appellee are more satisfied than we are with the reason given in support of the view, that because a servitude once created runs for ten years before being prescribed by non-use, it must be held: that the owner joining in an instrument which fixed no express term, must be regarded as, having created a ten-year term and, within the rule of Mulhern v. Hayne, where an express term was fixed, as having necessarily intended to renew the original servitude which had then as to some of the blocks, only seven years to run. But we are convinced that the instruments taken together clearly evidence a precise and practical acknowledgment of the servitude and that it would be difficult to find instruments, not carrying the purpose and intent in express words, which more clearly exhibit "the purpose and intention of the parties making the acknowledgment to interrupt the prescription then running."

We think the Civil Code, Article 3520, does not, in itself, or as construed and applied in the Louisiana decisions, justly or rightly lend support to any other view.

Appellant's reliance on Frost Lumber Industries v. Federal Petroleum Company, D.C., 20 F.Supp. 612; and Frost Lumber Industries, Inc. v. Union Power Company, 182 La. 439, 162 So. 37, 40; as holding that the very instruments in question here, were not effective as acknowledgments stopping the running of prescription, will not do. Aside from the fact that the same judge who wrote the Federal Supplement opinion wrote the later one from which this appeal is taken and either considered the two cases different or that his opinion in the first case was wrong, a reading of the two cases relied on will show that neither one of them will rule the case at bar. Neither of them concerned the lands involved here. In each of them the servitude, as to the lands in the suit, had never been exercised. In the Federal Supplement case, the question was not as here, as to whether the December, 1920, instrument would have been a sufficient acknowledgment to support a use made within ten years thereafter. The question was whether a series of instruments of various dates and kinds, running down to as late as February, 1928, and including minutes of director's meetings which had been executed by Frost-Johnson Lumber Company and its successors, after the creation of the January 12, 1917, servitude, had kept the servitude alive, as to lands on which no use of the servitude had ever been made. While it was said in the course of the opinion that the December, 1920, instrument was not a sufficient acknowledgment to interrupt prescription, what the opinion really held was that all of the instruments taken together had not been sufficient to extend the servitude indefinitely without use.

In the State Court case, while it is true that it was held that the December 23, 1920, transfer to Union was not a sufficient acknowledgment as to the lands in that suit, it was pointed out in the opinion that this was so because, "On reviewing the evidence offered on the trial of the case, we find that the various documents on which defendant relies for the interruption of the prescription pleaded by the plaintiff do not describe any of the lands involved in this case. All the documents, with a few exceptions, refer only to lands situated in the parishes of Ouachita and Union," [the parishes in which lie the lands in this suit]. Thus that case as Sellington v. Producers' Oil Company had done, 152 La. 81, 92 So. 742, decided that a mere reference in an instrument conveying certain lands to a servitude embracing the lands conveyed and some others, does not operate as a sufficient acknowledgment to preserve the servitude as to lands not conveyed by and

in the instrument relied on as an acknowledgment. The situation is entirely different here. The reliance here on the December, 1920, instruments, is on them because the lands they deal with are the very lands in Ouachita and Union, as to which the acknowledgment of the servitude is claimed. Of such a situation it was said in Frost Lumber Industries v. Union Power Co., supra: "It was in the deed from Mrs. Sellington to the Murrays that the language hereinabove quoted appeared. But that land was not involved in the suit. It was only on the remainder of the land that Mrs. Sellington sought to enforce her prescriptive rights. The language of the opinion shows that, while the stipulation contained in the deed from Mrs. Sellington to the Murrays might be sufficient to interrupt the running of prescription as to the land therein described, it was not sufficient to interrupt the running of the prescription as to other lands, although all the lands had been included in the sale of the mineral rights to the Producers' Oil Company."

The judgment was right. It is affirmed. Affirmed.