On Rehearing
 

 FOURNET, Chief Justice.
 

 The plaintiff, Long-Bell Petroleum Co., Inc., claiming to be the owner of all the oil, gas and other minerals in and under the Northwest Quarter of Section 27, all of Section 28, and the East Half of Section 29, Township 5 South, Range 9 West, in Beauregard Parish, Louisiana, and Barnsdall Oil Company, its lessee, instituted proceedings against the defendant, Sam R. Tritico, the owner of the land, to enjoin him from interfering with the exercise of their mineral and leasehold rights.- The plaintiffs also prayed that their respective rights be confirmed and recognized in and to these minerals. The case is now before us for a reconsideration of our decree handed down on March 21, 1949, affirming the judgment of the District Court granting the relief sought by .plaintiffs.
 

 It appears that in 1931 the ownership of a large tract of land located in Beauregard
 
 *445
 
 Parish, as reflected by the shaded area on two companies, the Long-Bell Farm Land the map hereinbelow reproduced, was in Corporation and the Long-Bell Lumber
 

 
 *447
 
 Sales Corporation; that portion shaded dark was owned by the former and that shaded yellow by the latter. On December 29, 1931, these two corporations appeared before W. S. Warner, Notary, Jackson County, Missouri, and through M. B. Nelson, the president of both corporations, executed separate deeds to “all the oil, gas and other minerals of each kind and character” in their respective holdings to the Long-Bell Minerals Corporation.
 

 On November 30, 1935, the Long-Bell Farm Land Corporation, the then owner of the acreage shaded dark, acquired the area shaded yellow by deed from the Long-Bell Lumber Company, the latter having acquired the same acreage on the same date from its owner, Long-Bell Lumber Sales Corporation. In these deeds the grantors were represented by M. B. Nelson, President of both companies.
 

 Under an agreement dated February
 
 27,
 
 1936, the Long-Bell Minerals Corporation and the plaintiff long-Bell Petroleum Co., Inc., appearing through the same board of directors, became merged; the former ceased to exist and all of its 'holdings, including the two 1931 servitudes, became the property of the latter. In the same year, by instrument dated December 28, 1936, the Long-Bell Farm Land Corporation through its President, Mr. M. B. Nelson, executed a deed, without warranty, for a consideration of $1,000, to “all the oil, gas and other minerals” affecting the entire area shaded dark and yellow, plus other lands, to the plaintiff Petroleum Company “subject to all rights of other parties under and by virtue of all valid recorded * * * servitudes * * * as shown by the real estate records of said Parish to which reference is here made.”
 

 Some five years later, on November 14, 1941, the Farm Land Corporation sold the acreage affected by the mineral rights here involved in two separate tracts of approximately equal size, one tract being sold to Charles H. Burton and the other to Earl R. McGraw and. wife. Neither of the vendees appeared and signed their deed. The two acts are identical except as to description of land and price, the recited consideration for the latter being $2,063.67 and for the former, $1,409.64. In these deeds the vendor was joined by the owner of the servitude previously imposed on the property, plaintiff Petroleum Company, both being represented through their Vice-President, Mr. A. L. Sweet (who appeared as a witness to all the deeds except the one of December 28, 1936, and as a Director of both companies in the merger agreement) ; and in the deed is contained the following clause: “There is hereby expressly reserved unto The Long-Bell Petroleum Company, Inc., its successors and assigns, all of the oil, gas and minerals beneath the surface of all the land above described, with full and exclusive right and authority to exercise all 'reasonably necessary means for the prospecting, exploring and developing of such oil, gas and other minerals, including such
 
 *449
 
 right of access to the use of the surface of said land as may be necessary or incidental to this reservation; provided, however, that the Vendee, or his heirs or assigns, shall not be required to remove any buildings or other improvements placed or made upon said land, and provided further that in the exercise of said reservation reasonable compensation shall be made for danrage caused to said land and improvements and growing crops thereon, and reasonable rentals shall be paid for such of said land, if any, as may be used exclusively for such purposes.”
 

 By deed dated March 12, 1945, McGraw sold his land to Burton “Subject to outstanding oil, gas and mineral reservations and road right of ways” and on May 22, 1945, Burton sold both tracts to the defendant Sam R. Tritico, with the following stipulation: “Said property is sold subject to such reservations and restrictions as were set forth in two certain deeds dated November 14, 1941, recorded in Conveyance Book No. 80, at pages 260 and 262 of the Records of Beauregard Parish, Louisiana.”
 

 In order to develop or exploit its mineral rights, the plaintiff Petroleum Company on December 9, 1946, executed an oil and gas lease to its coplaintiff Barnsdall Oil Company affecting a large area in which is included the mineral rights in and under defendant’s property.
 

 According to the basic allegations of the plaintiffs’ petition, it is contended that the Petroleum Company is the owner of the minerals in and under defendant’s property, the claim being that at the time of the execution of the 1941 deeds it owned, by virtue of the deed of December 28, 1936, the minerals under all of the land which appears as shaded dark and yellow on the map (including the property described in the 1941 deeds), and that by the above-quoted reservations, two new servitudes were created and at the same time, insofar as the acreage contained in the 1941 deeds is concerned, the old servitude became extinguished. In the alternative, plaintiffs contend that the 1936 servitude continued in full force and is still in effect because of the interruption of prescription (1) by the drilling of a well by the California Company in 1939 and by the completion of a well by the plaintiff Barnsdall Oil Company in 1946 where indicated on the yellow shaded portion, and (2) by acknowledgment, in the 1941 deeds.
 

 For answer, defendant denied plaintiffs’ ownership or right to exercise any servitude on his land, especially pleading that at the time of the sale in 1936 by the Farm Land Corporation to the plaintiff Petroleum Company of all the minerals under the land appearing as shaded dark and yellow on the map, there was in existence, affecting the same property, two separate and distinct servitudes created on December 29, 1931, by the deeds of the Long-Bell Farm Land Corporation and the Long-Bell Lumber Sales Corporation to the Long-Bell Minerals Corporation, its predecessor in
 
 *451
 
 title; and likewise, when the so-called reservations contained in the deeds of 1941 were made, these two servitudes were still outstanding; consequently, under the well-recognized rule of law that the owner of land encumbered with a mineral servitude is precluded from again selling or reserving the same mineral rights, the sale of the mineral rights in the 1936 deed and the reservations in the 1941 deeds were ineffective; and, insofar as the servitude affecting the acreage shaded dark, since there was no interruption of the prescription then accruing either by drilling on any portion thereof or by acknowledgment within ten years, it became extinguished by prescription on December 29, 1941.
 

 When oil and gas were first discovered in the State and the interests of those asserting rights to such oil and gas as a result of sales or reservations became controversial, this Court, recognizing that under our system of law there can be no other land tenure than perfect ownership and imperfect ownership, decreed that there could be no mineral estate in oil and gas as such and that the sale or reservation of minerals was the mere grant or retention of a right to go on the land for the exploration or exploitation of such minerals. Such right was classified as being a real right in the nature of a servitude, to be governed by the laws of this State on the subject matter. See Frost-Johnson Lumber Co. v. Salling’s Heirs, 150 La. 756, 91 So. 207; Nabors Oil
 
 &
 
 Gas Co. v. Louisiana Oil Refining Co., 151 La. 361, 91 So. 765; Wemple v. Nabors Oil & Gas Co., 154 La. 483, 97 So. 666; Lee v. Giauque, 154 La. 491, 97 So. 669; Bodcaw Lumber Co. v. Magnolia Petroleum Co., 167 La. 847, 120 So. 389; Keebler v. Seubert, 167 La. 901, 120 So. 591; Sample v. Whitaker, 172 La. 722, 135 So. 38; Clark v. Tensas Delta Land Co., 172 La. 913, 136 So. 1; Patton v. Frost Lumber Industries, 176 La. 916, 147 So. 33; Holladay v. Darby, 177 La. 297, 148 So. 55; Lynn v. Harrington, 193 La. 877, 192 So. 517.
 

 This Court, reasoning in the case of De Moss v. Sample, 143 La. 243, 78 So. 482, said: “There is no law which forbids the owner of land to sever its constituent parts, and sell one or more of those parts and retain the remainder”, and “As the law does not forbid the owner of land to reserve to himself the minerals lying under the surface thereof * * *, such reservation properly became the subject, or motive, of the contract between the parties”; and in the later case of Palmer Corporation v. Moore, 171 La. 774, 132 So. 229, 232, concluded : “When a landowner sells only the mineral rights in his land, or sells the land and reserves the mineral rights, the transaction constitutes a
 
 dismemberment of the
 
 ownership, and is a sale or reservation, as the case may be,
 
 of one of the elements of
 
 ownership(Emphasis supplied); and classified such right to be a servitude.
 

 However, the right to impose such rights or servitudes on an estate- belongs exclusively to the owner, Hanby v. Texas
 
 *453
 
 Co., 140 La. 189, 72 So. 933; De Moss v. Sample, supra; Wemple v. Nabors Oil & Gas Co., 154 La. 483, 97 So. 666; Wiley v. Davis, 164 La. 1090, 115 So. 280; Palmer Corporation v. Moore, supra; Patton v. Frost Lumber Industries, 176 La. 916, 147 So. 33; Mt. Forest Fur Farms v. Cockrell, 179 La. 795, 155 So. 228; Hodges v. Norton, 200 La. 614, 8 So.2d 618; Gulf Refining Co. v. Orr, 207 La. 915, 22 So.2d 269; see, also, Revised Civil Code, Arts. 490 and 491, and can only be established by acts such as are used in the transfer of title to immovable property, Revised Civil Code, Arts. 743, 766, 770; see, also, Hanby v. Texas Company, supra; Goldsmith v. McCoy, 190 La. 320, 182 So. 519; and are extinguished by the prescription resulting from non-usage during the time required for their extinction (10 years), Revised Civil Code, Art. 783, § 2; Arts. 789 and 3546. They may also be extinguished by the renunciation on the part of him to whom the servitude is due, Art. 783, § 5; however, in order to accomplish the release of a mineral servitude by its renunciation, the release must be in writing and clearly express such intention, Art. 817. Prescription ceases likewise to run whenever the debtor, or possessor, makes acknowledgment of the right of the person whose title they prescribe, Art. 3520.
 

 In considering the primary question presented by plaintiffs’ pleadings — that is, that two new servitudes were created affecting the tracts transferred in the 1941 deeds, and that the servitude established by the 1936 deed in favor of the plaintiff Petroleum Company, insofar as the property here involved, was extinguished — we do so in the light of the foregoing authorities and in accordance with the intention of the parties as reflected by their contract, for “The contract must be viewed as a whole, and the intention of the parties gathered from all its parts, to the end of giving practical effect to the instrument in the way intended * * Calhoun v. Ardis, 144 La. 311, 313, 80 So. 548, 549. See Revised Civil Code, Arts. 1764, 1945-1962; State ex rel. Bourgaux v. Fontenot, 192 La. 95, 187 So. 66; Moriarty v. Weiss, 196 La. 34, 198 So. 643.
 

 There is nothing in the deeds of 1941 from which it would be safe to conclude, without conjecture, that plaintiff Long-Bell' Petroleum Company intended to relinquish or renounce the servitude owned by it affecting a larger area, including the property that was transferred by those acts, in order that the Long-Bell Farm Land Corporation, the vendor, might effectively exclude from the sale to the respective vendees, the oil, gas and mineral rights sought to be reserved therein; because the Farm Land Corporation, in order to reserve those mineral rights and thus create new servitudes, of necessity had to be the owner of the minerals. There is nothing in the deeds which clearly expresses an intention to renounce; and the Petroleum Company, not having clearly ex
 
 *455
 
 pressed in the acts its intention to renounce the servitude, we are unauthorized to presume that it intended to do so.
 

 It is our opinion that the clause contained in the two deeds was intended for the protection of the vendor Long-Bell Farm Land Corporation under its warranty, and also for the protection of the vendees against damage or inconvenience they might suffer through the use of the servitude. Hence the reason for the appearance of the Petroleum Company in those deeds.
 

 We cannot quite follow the argument that since the plaintiff Petroleum Company, the owner of the mineral rights affecting the property which was transferred to the defendant’s authors in title by the deeds of 1941, joined as vendors in these deeds with the landowner, Long-Bell Farm Land Corporation, the vendees thereby received unqualified ownership not only of the land with the reversionary rights to the minerals but also of the minerals in and under the land conveyed, and that, although the vendees did not sign the deeds, the fact that they accepted the deeds with the reservation had the legal effect of creating new mineral servitudes; for title to such mineral rights, under the express provisions of the deeds, was never transferred. Consequently, title never passed to these vendees and the vendees had nothing to re-convey. They received nothing in the way of mineral rights which they could convey.
 

 We now pass to the consideration of the plaintiffs’ alternative claims, i. e., that the servitude created in favor of the Petroleum Company by the act of December 28, 1936, continues in full force and effect (1) because of the interruption of prescription by the drilling of a well in 1939 and the completion of one in 1946, as indicated on the map, and (2) by acknowledgment in the 1941 deeds.
 

 In considering the plaintiffs’ first alternative plea we are faced with the obstacle urged by the defendant that the Long-Bell Farm Land Corporation, when it executed the instrument of December 28, 1936, had no mineral interest to sell and consequently was powerless to create a new servitude affecting the same rights, since the land involved was already burdened with the servitude which had been established in 1931 by deed from the Farm Land Corporation to the Long-Bell Minerals Corporation, and covering the area shaded dark on the map; and of necessity that servitude became extinguished on December 29, 1941, because of its non-use for a period of ten years— the drilling operations in 1939 and 1946 having been conducted on land affected by the other servitude created on the same date by the then landowner, Long-Bell Lumber Sales Corporation, covering the yellow shaded area.
 

 It is elementary that if, on December 28, 1936, the Long-Bell Farm Land Corporation did not own the mineral rights to the vast acreage appearing shaded dark and shaded yellow on the plat herewith reproduced, those rights having been pre
 
 *457
 
 viously dismembered from the full ownership by the deeds of 1931, the Farm Land Corporation was powerless to establish a servitude conveying such rights, unless it affirmatively appears, in clear and unmistakable language to be found in the act of December 28, 1936, that the plaintiff Petroleum Company intended to relinquish or renounce the two servitudes which had been previously created by the two deeds executed on the same date, December 29, 1931.
 

 Our examination of the deed of December 28, 1936, discloses no language from which we could eke out an intention on the part of the plaintiff Petroleum Company to make such a renunciation. The deed simply provides that “Long-Bell Farm Land Corporation * * * does grant, bargain, sell and convey * * * with complete transfer and subrogation óf rights * * against all former proprietors * * * but without any warranty or guaranty of title * * '* unto the Long-Bell Petroleum Company, Inc., * * * all of the oil, gas and other minerals of each kind or character on, in and under [here follows a description of the acreage] * * *
 
 subject to all rights of other parties under and by virtue of all valid recorded
 
 * *
 
 servitudes
 
 * * *
 
 as shown by the real estate records of said Parish to which reference is here made
 
 * * * for and in consideration of the sum of One Thousand Dollars * * * (Italics. ours.) The above language clearly shows not only that there was no intention on the part of the Petroleum Corporation to relinquish or renounce its rights to the servitudes created by the two deeds of 1931, but rather that the intention was to recognize their full existence.
 

 We therefore conclude that the drilling operations of the California Company in 1939, and of the plaintiff Barnsdall Oil Company in 1946, not having been conducted on the defendant’s property or within the area affected by the servitude of December 29, 1931, created by the Long-Bell Farm Land Corporation (in which area the defendant’s property is included), consequently did not interrupt the prescription then accruing.
 

 Having concluded that the attempt to create a servitude by the deed of December 28, 1936, in favor of the plaintiff Petroleum Company, since the property was already burdened with a servitude, was ineffective, of necessity plaintiffs’ contention that prescription on such servitude was interrupted by acknowledgment because of the reservation contained in the deeds of November 14, 1941, must fall. But we must nevertheless, in view of the defendant’s pleadings, consider whether these clauses were intended to acknowledge the existing servitude of 1931 and did interrupt prescription.
 

 This plea has for its basis Article 3520 of the Revised Civil Code, which states that “Prescription ceases * * * to run whenever the debtor, or possessor, makes
 
 *459
 
 acknowledgment of the right of the person whose title they prescribe.” However, as pointed out in the case of Bremer v. North Central Texas Oil Co., Inc., et al., 185 La. 917, 921, 171 So. 75, 77, that Article “does not mean that a mere acknowledgment of the existence of the rights of those in whose favor the servitude runs interrupts prescription. There must be more than a bare ■ acknowledgment; the acknowledgment must be accompanied by or coupled with ‘the purpose and intention of the party making the acknowledgment to interrupt the prescription then running.’ ” The case of Frost Lumber Industries, Inc., v. Union Power Co., Inc., 182 La. 439, 162 So. 37, contains an exhaustive review of the jurisprudence on the subject matter; see, also, Spears v. Nesbitt, 197 La. 931, 2 So.2d 650; Baker v. Wilder, 204 La. 759, 16 So.2d 346. Certainly no language ubed in the acts clearly expresses such an intention, and we find none in the acts from which such an intention could be inferred. Moreover, it may be observed that whatever merit might have been claimed for this contention we think loses its force in the face of plaintiffs’ primary argument that the intention of the parties was in fact to create new servitudes.
 

 We therefore conclude that on November 14, 1941,. when the defendant’s authors in title acquired the property hereinabove described, it was burdened with the servitude created by the deed of December 29, 1931, executed by the Long-Bell Farm Land Corporation in favor of the Long-Bell Minerals Corporation, the plaintiff Petroleum Company’s ancestor in title, which servitude became extinguished on December 29, 1941, by prescription because of its non-use.
 

 For the reasons assigned, the judgment of the lower court is annulled and set aside, and it is now ordered, adjudged and decreed that the defendant’s plea of prescription of ten years liberandi causa affecting all of the oil, gas and other mineral rights in and under the Northwest Quarter of Section 27, all of Section 28, and the East Half of Section 29, Township 5 South, Range 9 West, in Beauregard Parish, Louisiana, is sustained, and the plaintiffs’ suit is dismissed at their cost. The right to apply for a rehearing is reserved to the plaintiff.
 

 HAWTHORNE and McCALEB, JJ., dissent from the refusal of a rehearing on the second alternate plea. •
 

 HAMITER, J., dissents from a refusal of a rehearing.